## MARTIN T. LEE v. JAMES DOLAN, Sheriff of Mountrail County, North Dakota.

### (158 N. W. 1007.)

**Execution — writ of — sheriff — officer — failure or refusal to execute — return of — to proper court — amercement — amount of debt — damages — costs — statute — imperative — penal in terms — discretion — court has none — damages — failure to show — lack of damages — irrelevant — immaterial.**

1. Section 7770, Compiled Laws of 1913, which provides, among other things, that "if any sheriff or other officer shall refuse or neglect to execute any writ of execution to him directed, which has come to his hands, . . . or to return any writ of execution to the proper court on or before the return day, . . . such sheriff or other officer shall on motion in court and two days' notice thereof in writing be amerced in the amount of said debt, damages and costs with 10 per cent thereon to and for the use of said plaintiff or defendant as the case may be," is imperative and penal in its terms, and grants no discretion to the court, and in a proceeding thereunder a showing of damages or lack of damages on account of a failure to levy or to make a return of the execution within the time prescribed by the statute is irrelevant and immaterial.

· On Petition for Rehearing.

**Sheriff — amercement of — execution — return of — failure to make — proof necessary — admissions — no proof necessary — evidence — insufficiency of — question — cannot be raised for first time on appeal — excusable neglect.**

2. Although in a proceeding to amerce a sheriff under the provisions of § 7770 of the Compiled Laws of 1913 for the failure to return an execution within the time limited, it is necessary to make proof both of the execution and of the judgment, the plaintiff is not compelled to prove that which the defendant admits, nor is the defendant allowed to raise in the supreme court questions as to the insufficiency of the evidence which were not raised before the trial judge; and where the answer admits that a judgment was duly entered and docketed wherein L. was plaintiff and B. was defendant, and that an execution was duly issued and delivered for service, and pleads and seeks to prove no other defense but that the failure to return the same was due to excusable neglect, no further proof of the judgment is necessary.

34 N. D.—29.

Action — parties to — naming of — judgment in — execution issued on such
    judgment — presumption.

    3. Where in a court a judgment is entered in an action wherein a certain
person is named as plaintiff and another certain person as defendant, and an
execution issued out of said court bearing indentically similar names, the pre-
sumption will be that the execution was issued on the judgment referred to.

Sheriff — execution — liability for failure to return — statute — constitu-
    tional — punishments — laws of a general nature — uniform operation
    — due process.

    4. Section 7770 of the Compiled Laws of 1913, which imposes upon a
sheriff who fails to make a return of an execution within the time required by law
a liability to the extent of the judgment with 10 per cent interest, is not in
violation of §§ 6, 11, and 13 of art. 1 of the Constitution of North Dakota, which
provide that no cruel or unusual punishments shall be inflicted; that all laws of
a general nature shall have a uniform operation, and that no person shall be
deprived of life, liberty, or property without due process of law.

Opinion filed April 22, 1916. Petition for rehearing July 21, 1916.

Appeal from the District Court of Mountrail County, *Frank E. Fisk,*
Judge. Judgment for plaintiff. Defendant appeals.

Action in amercement under § 7770, Compiled Laws of.1913.

Affirmed.

*Pierce, Tenneson, & Cupler* and *Henry J. Linde,* for appellant.

The Amercement Statute of this state as to sheriffs and other officers
failing, neglecting, or refusing to execute upon an execution placed in
their hands, is not penal in its nature, and where it appears from the
evidence that the plaintiff has sustained no damages by the acts or omis-
sions of the officer, he is not entitled to recover damages. Comp. Laws
1913, § 7770; Swenson v. Christoferson, 10 S. D. 188, 66 Am. St. Rep.
712, 72 N. W. 459.

"The standard measure of damages being the value of property
belonging to the judgment debtor, and available as a source of revenue
to be applied in satisfaction of the judgment, the ownership of such
property was certainly an essential subject of inquiry, and appellant
has suffered no injury if defendants had no interest in the property at
a time material to this action." Swenson v. Christoferson, supra;
Crooker v. Melick, 18 Neb. 227, 24 N. W. 689; McFarland v. Schuler,
12 S. D. 83, 80 N. W. 161.

The question is, Could the judgment debt have been collected out of

property of the defendant at any time during the life of the execution? Crooker v. Melick, supra; Hellman v. Spielman, 19 Neb. 152, 27 N. W. 131; Shufeldt v. Barlass, 33 Neb. 785, 51 N. W. 134; Code Civ. Proc. § 3039; Knapp v. Sweet, 24 N. Y. Supp. 817.

The language of the Texas statute is apparently penal, but that court has held that the officer may defeat a recovery by showing that the plaintiff has not been damaged by his neglect. Curry v. Farley, 8 Daly, 228; Smith v. Perry, 18 Tex. 510, 70 Am. Dec. 295; Maury v. Cooper, 3 J. J. Marsh. 224; Comp. Laws, §§ 5924, 5925, 7145, 7183, 7186, 7188; Ellis v. Blanks, — Tex. Civ. App. —, 25 S. W. 309; Ranken v. Jones, — Tex. Civ. App. —, 53 S. W. 583; Moore v. Floyd, 4 Or. 101; Beck & G. Hardware Co. v. Knight, 3 L.R.A.(N.S.) 420, and note, 121 Ga. 287, 48 S. E. 930, 2 Ann. Cas. 9.

While it may be true that our statute is penal in its nature, as are all statutes providing a summary method of enforcing rights, yet our court has impliedly held that any such officer may justify his acts or omissions by showing that plaintiff has suffered no damage thereby. Milburn-Stoddard Co. v. Stickney, 14 N. D. 282, 103 N. W. 752; 36 Cyc. 1189; First International Bank v. Lee, Ann. Cas. 1912D, 731, and note, 19 N. D. 10, 120 N. W. 1093; First International Bank v. Lee, 25 N. D. 197, 141 N. W. 716; First International Bank v. Lee, Ann. Cas. 1912D, 732, and cases cited; 25 Am. & Eng. Enc. Law, 694, 706, 707; 35 Cyc. 1888, 1890, 1892; Richardson v. Wicker, 80 N. C. 172.

Where a statute imposes a penalty of a fixed amount "in addition to the actual damages sustained, the penalty cannot be recovered by one who has sustained no actual damages." 35 Cyc. 1891, 1892.

*Hall, Alexander, & Purdy* and *George A. Gilmore,* for respondent.

No rule of statutory construction is better established than that legal terms having a well-defined meaning at common law must be understood in the same sense when used in a statute. 36 Cyc. 1118; Vann v. Edwards, 135 N. C. 661, 67 L.R.A. 461, 47 S. E. 784; Ex parte Vincent, 26 Ala. 145, 62 Am. Dec. 714; 2 C. J. 1319; Beecher's Case, 8 Coke, 58, 77 Eng. Reprint, 559; Godfrey's Case, 11 Coke, 42, 77 Eng. Reprint, 1199; Re Nottingham [1897] 2 Q. B. 502, 66 L. J. Q. B. N. S. 883, 77 L. T. N. S. 210, 61 J. P. 725.

Under the broader definition penal statutes include not only those in which the penalty is recovered by a public prosecution, but also those

permitting a recovery of the penalty by a private individual, as in an action of debt or qui tam. 36 Cyc. 1180; Waldner v. Bowden State Bank, 13 N. D. 604, 102 N. W. 169, 3 Ann. Cas. 847; Kirby v. Western U. Teleg. Co. 4 S. D. 463, 57 N. W. 202; Jones v. Fidelity Loan & T. Co. 7 S. D. 122, 63 N. W. 553; Rutzkowski v. George, 92 Hun, 412, 36 N. Y. Supp. 762; Ellis v. Blanks, — Tex. Civ. App. —, 25 S. W. 309; Hale v. Bickett, 34 Tex. Civ. App. 369, 78 S. W. 531.

"An amercement, strictly speaking, is a penalty, and is for a fixed sum without regard to the extent of the injury suffered by the complaining party, by reason of the default for which it is imposed." 35 Cyc. 1887, 1890; Bond v. Weber, 17 Kan. 410; Duncan v. Drakeley, 10 Ohio, 46; Moore v. McClief, 16 Ohio St. 50; Henderson-Sturges Piano Co. v. Smith, 33 Okla. 335, 125 Pac. 454.

"On a failure to return an execution the sheriff becomes liable for the amount of the judgment." Reid v. Dunklin, 5 Ala. 205; Cox v. Ross, 56 Miss. 481; Chaffin v. Crutcher, 2 Sneed, 360; Goodnow v. Willard, 5 Met. 517; Bachman v. Fenstermacher, 112 Pa. 331, 4 Atl. 546.

"Whether any damage was done to the plaintiff is immaterial. The amercement is for failure to discharge an official duty." Swain v. Phelps, 125 N. C. 43, 34 S. E. 110; Hawkins v. Taylor, 56 Ark. 45, 35 Am. St. Rep. 82, 19 S. W. 105; State ex rel. Thomas v. Youmans, 5 Ind. 280; Magee v. Robins, 2 La. Ann. 411; Wright v. Cannon, 3 Harr. (Del.) 487; Breuer v. Elder, 33 Minn. 147, 22 N. W. 622; Milburn-Stoddard Co. v. Stickney, 14 N. D. 282, 103 N. W. 752.

BRUCE, J. This is a proceeding under the provisions of § 7770, Compiled Laws of 1913, relating to the amercement of sheriffs. In the district court, findings of fact were made to the effect that on the 28th day of May, 1914, a judgment for $975.01 in favor of the plaintiff, Martin T. Lee, and against John J. Brugman, was duly rendered and docketed in the district court of the county of Mountrail; that on January 22d, 1914, an execution was duly issued upon said judgment and delivered to the present defendant, James Dolan, as sheriff of said county, with instructions to levy and return the same within sixty days after its receipt, to the clerk of the district court of said county; that defendant failed to execute said execution, and did not return the same

within sixty days, or at all; that while the execution was in the hands of the defendant, the judgment debtor was the owner of some real and personal property in said county which might have been founded and levied upon by the exercise of reasonable diligence. As a conclusion of law the district court found that the defendant was liable in amercement in the amount of the judgment with 10 per cent added, and judgment was entered accordingly. From this judgment the present appeal is taken.

The findings of fact made by the trial court are, as we view them, substantially correct. We may add, however, that no specific directions were given to the sheriff to levy on any particular property,—the execution being given to him with directions merely to levy generally, and it being suggested to him that there was possibly some bank stock which could be levied upon. The question, indeed, to our minds, has simmered down to the one proposition, and that is whether, under the statute of North Dakota, a sheriff who fails to levy an execution within the sixty days, and does not return it within the sixty days, and who, during such sixty days, fails to answer the letters of the plaintiff in relation thereto, is liable absolutely for the face of the judgment with 10 per cent added, or can be held only for such damages as actually accrued to the plaintiff from the failure to levy the execution or to return it unsatisfied within the sixty days.

We are satisfied that the plaintiff had the right to have his execution levied. His letter to the sheriff was as follows: "Will you kindly call at the clerk of court's office in your city for an execution in the case of Lee against John J. Brugman, and we will ask you to make a levy on any property you can find of this party, at once, as we have recently been told that he is selling out and we want to tie up any property that can. He may have some bank stock in some of those banks which you can get at, and you no doubt know this party as he has been a banker at Tagus in your county. Kindly send us a statement of your fees in the case when you make levy and we will remit."

It is clear to us, indeed, that even if the levy would have been of no avail, it was incumbent upon the sheriff to answer the letters of plaintiff, and to return the execution unsatisfied within the statutory time, so that plaintiff might take such steps as might appear to him to be necessary for his protection. Irrespective of the question whether any property

could have been reached or not, there was a clear violation of duty on the part of the sheriff, and the only question at issue is his liability therefor under the provisions of the statute. Section 7770 of the Compiled Laws of.1913 reads: "If any sheriff or other officer shall refuse or neglect to execute any writ of execution to him directed, which has come to his hands, . . . or to return any writ of execution to the proper court on or before the return day, . . . such sheriff or other officer *shall* on motion in court and two days' notice thereof in writing be amerced in the amount of said debt, damages and costs with 10 per cent thereon to and for the use of said plaintiff or defendant as the case may be." It is the plaintiff's theory that under this statute the liability of the sheriff is ·absolute, and that a showing of damages or lack of damages is irrelevant. Is this theory correct? We think it is.

In support of the position of the defendant and appellant, and which is that only such damages can be recovered as may be proven, we find the South Dakota case of Swenson v. Christoferson, 10 S. D. 188, 66 Am. St. Rep. 712, 72 N. W. 459, in which it was held that a statute identically similar to our own was not penal, and, it appearing from the evidence that the plaintiff had not been damaged by the acts of the officer, he was not entitled to recover.

This case was handed down in October, 1897, and is based entirely upon the authority of the Nebraska case of Crooker v. Melick, 18 Neb. 227, 24 N. W. 689.

The Nebraska decision was handed down in 1885 and also construes a statute which was also similar to our own. It, like the opinion of the supreme court of South Dakota, is based upon and cites no authority. Its reasoning is as follows:

"The only new liability sought to be created by the above statute is the˙ penalty of 10 per cent. Without the statute the sheriff would be equally liable for all but the penalty; with it, he is only liable for actual damages, possibly with the penalty added. The statute gives a short, cheap, and expeditious remedy, but it only lies where an action in the nature of trespass on the case would lie. In the case at bar, if it be true, as stated by the sheriff in his answer, that Edward Haley, the execution defendant, had no property within the county at any time during the life. of said writs of execution, out of which the same, or any part thereof, could have been collected, how can it be said that the plaintiff

was damaged by the failure of the sheriff to return the writs in time? If the writs had no value when they came into the sheriff's hands, they could lose none by reason of their retention by him until after the return day; and they could gain none except on the principle of forfeiture. Our laws do not favor forfeitures, and under the provisions of the Constitution, it is doubtful if the plaintiff can recover a technical forfeiture from the sheriff in such a case.

"It is the boast of our improved system of pleading and practice, that the actual facts of every case may be pleaded and proved without regard to fictions or technicalities. This would be of little avail if, in cases like the one at bar, the law had closed the door of investigation, and ascribed to excusable neglect or unavoidable accident the same consequences of punishment and loss as those which follow criminal malpractice. But such is not the law. It is the actual damage which the plaintiff has sustained in the value or availability of his security that he is entitled to recover in such cases in either form of proceeding, and all legal facts touching such value and availability may always be pleaded and proved. 'Notwithstanding the proof of the debt, and the sheriff's neglect, the inquiry is permitted whether the debt could have been collected. The original debt is, of course, the gist of the action, and it is perfectly well settled that the existence of such debt must be proved by the plaintiff. But, if that fact is established, the equally important inquiry remains whether the recovery of the debt has been prejudiced by the acts of the defendant. In other words, whether, under any circumstances, it could have been collected of the defendant's property.' 2 Sedgw. Damages, 7th ed. 447."

The South Dakota case above cited is followed by the South Dakota case of McFarland v. Schuler, 12 S. D. 83, 80 N. W. 161, and the Nebraska case is followed by the Nebraska cases of Hellman v. Spielman, 19 Neb. 152, 27 N. W. 131, and Shufeldt v. Barlass, 33 Neb. 785, 51 N. W. 134. The later South Dakota case of McFarland v. Schuler, supra, however, is hardly in point, as it is an action for damages for failing to levy on an attachment, and is not an amercement proceeding at all. In addition to these cases defendant and appellant cites the New York case of Knapp v. Sweet, 24 N. Y. Supp. 817, in which the New York court under § 3039 of the Code of Civil Procedure, which provided that "an action may be maintained against a constable

for a neglect to return an execution within sixty-five days after the return day thereof," and "that the party in whose favor it was issued may recover in an action against the constable the amount of the execution if it was issued upon a judgment for a sum of money only, with interest from the time when the judgment was rendered," held that the constable might show that no damages were sustained by the plaintiff. The court in this case says: "Section 3039 is in the nature of a penalty imposed for a neglect of duty on the part of a constable to return the execution within sixty-five days after the return day thereof, and the nonreturn is prima facie evidence of his liability for the amount of the judgment and interest thereon. But is this rule to be applied when a defense is made that the plaintiff in the execution was not damaged or injured from the want of such return? We think not. It was held in the case of Curry v. Farley, 8 Daly, 228, 'that the constable does not incur the statutory penalty by his failure to return and file the execution within the time specified, if, in fact, he has not collected any money thereupon.' "

This New York case, however, was expressly overruled by a later case decided in another branch of the same court (New York supreme court), namely, Rutzkowski v. George, 92 Hun, 412, 36 N. Y. Supp. 762, where it was said: "In Knapp v. Sweet, supra, the view of the court as there expressed was that the same right is allowable to mitigate damages by a constable liable in an action for default in returning an execution, as is available to a sheriff as a defense. This would be so if the statute provided for the recovery of damages, but the provision that the party may recover against the constable 'the amount of the execution' has no qualification in the terms of the statute."

Appellant also cites the case of Smith v. Perry, 18 Tex. 510, 70 Am. Dec. 295, and which construes a statute somewhat similar to our own. That statute provides "that, should an officer neglect or refuse to return an execution as required by law, or should he make a false return thereof, he and his sureties shall be liable to the party entitled to receive the money collected on such execution for the full amount of the debt, interest, and costs to be recovered, as provided in the preceding section." and the preceding section provides for a procedure such as that which is before us. The opinion in the case was handed down in 1857, and held that the statute was not penal, and merely created a prima facie

liability against the sheriff for the full amount of the debt, interest, and costs, which could have been overcome by proof of a reasonable excuse or that the plaintiff had sustained no injury. The court, however, held that nominal damages could at any rate be recovered. The reasons given by the court for refusing to hold the statute penal were:

(1) That, if penal, it would make no difference though, after the issuance of the execution and the expiration of the time for making the return, the debt had been paid.

(2) That the primary object of the statute must have been to give compensation; otherwise the penalty would have been given to the state, and not to the plaintiff in the execution.

The opinion also discloses that the court was also actuated by the fear that "the temptation to seek to fix liability upon him [the sheriff] will, of course, be in proportion to the difficulty of collecting the debt from the judgment debtor. In Kentucky, where it seems the insolvency of the defendant in execution has not been admitted as a defense under their statute, the court on one occasion remarked that executions have sometimes issued against men hopelessly bankrupt with no other design than to take advantage of some possible slip or omission of the officer of the law; per Robertson, Ch. J., Maury v. Cooper, 3 J. J. Marsh. 224."

"Sheriffs," the court added, "should be held to a strict accountability, and wherever injury has or may have resulted to a party from neglect of duty by themselves or their deputies, they and their sureties should be made responsible. But the officer ought not be subjected to such perils and penalties for mere technical defaults, where no one has been injured, as that no discreet or judicious man would be willing to take upon himself the responsibility of the office. It cannot be supposed that the legislature intended, nor does the language of the statute require, a construction which would impose such penalties for the benefit of those who have not been injured by the dereliction of the officer."

In addition to this case, and practically holding to the same conclusions, are the cases of Weld v. Bartlett, 10 Mass. 470; Bank of Rome v. Curtiss, 1 Hill, 275; Pardee v. Robertson, 6 Hill, 550; Moore v. Floyd, 4 Or. 101; Harris v. Murfree, 54 Ala. 161; Ellis v. Blanks, — Tex. Civ. App. —, 25 S. W. 309; Ranken v. Jones, — Tex. Civ. App. —, 53 S. W. 583; Beck & G. Hardware Co. v. Knight, 3 L.R.A.

(N.S.) 420, and note (121 Ga. 287, 48 S. E. 930); Kidder v. Barker, 18 Vt. 454.

Of these cases, however, the cases of Weld v. Bartlett; Moore v. Floyd; Beck & G. Hardware Co. v. Knight, and Kidder v. Barker, are not in point, as they were actions in tort for damages and brought in jurisdictions where there was no express statute upon the subject. The cases of Bank of Rome v. Curtiss and Pardee v. Robertson are also not in point, as they were brought under a statute which merely provided that "for any violation of this provision such sheriff or other officer shall be liable to an action at the suit of any party aggrieved for the damages sustained by him, in addition to any other fine, punishment, or proceeding which may be authorized by law."

The case of First International Bank v. Lee, 19 N. D. 10, 120 N. W. 1093, Ann. Cas. 1912D, 731, is also not in point, as the action was only for damages, and not one under any statute, and not one in amercement.

Opposed to these cases, and holding under similar statutes to that of North Dakota to the rule of absolute liability, which was adopted by the learned trial judge in the case at bar, are the cases of Hall v. Brooks, 8 Vt. 485, 30 Am. Dec. 485 (1836); Bond v. Weber, 17 Kan. 410; Duncan v. Drakeley, 10 Ohio, 45; Moore v. McClief, 16 Ohio St. 50; Henderson-Sturges Piano Co. v. Smith, 33 Okla. 335, 125 Pac. 454; Reid v. Dunklin, 5 Ala. 205; Cox v. Ross, 56 Miss. 481; Goodnow v. Willard, 5 Met. 517; Bachman v. Fenstermacher, 112 Pa. 331, 4 Atl. 546; Swain v. Phelps, 125 N. C. 43, 34 S. E. 110; Hawkins v. Taylor, 56 Ark. 45, 35 Am. St. Rep. 82, 19 S. W. 105; State ex rel. Thomas v. Youmans, 5 Ind. 280; Breuer v. Elder, 33 Minn. 147, 22 N. W. 622; Smith v. Martin, 20 Kan. 572.

In considering these statutes the language of Mr. Justice Brewer then on the supreme court of Kansas, which was rendered in the case of Bond v. Weber, 17 Kan. 410, is both conclusive and suggestive.

"If we give to this language its ordinary meaning, there can be but one conclusion. It is not that he *may* be amerced, but that he *shall* be. The duty of returning the execution within sixty days is expressly cast upon him; and a failure to perform that duty as expressly subjects him to amercement. *The terms of the statute imply no discretion.* The command is positive and peremptory. The amercement is not in com-

pensation, and to be measured by the extent of the injury but a penalty for neglect of duty, and of definite and fixed amount. Such were the views held in Ohio, from which state we took this statute. In Duncan v. Drakeley, 10 Ohio, 46, the court says: 'In proceedings under the statute authorizing the amercement of an officer, great strictness is required, and he who would avail himself of the remedy therein provided must bring himself both within the letter and spirit of the law. It is right that it should be so, *because the remedy is summary and in its consequences highly penal.* There is no trial by jury, and but little, if any, discretion left to the court. And again, after enumerating the cases in which an amercement may be had, it adds: 'While in an action at common law a plaintiff in any of these cases would recover only the damages actually sustained, by seeking his remedy under this statute he is sure to recover, if he recover at all, *the full amount of the debt,* with the additional penalty. *The object of the law is undoubtedly to induce fidelity on the part of a sheriff, but if carried into execution it sometimes operates very severely.'* So, also, in Moore v. McClief, 16 Ohio St. 50, the court uses this language: 'The plaintiff's right to demand a judgment of amercement in this case can rest on no equitable grounds, for the neglect of official duty of which she complains has done her no injury. The execution debtor was wholly insolvent when judgment was recovered against him, and has continued to be so ever since. Her rights then are purely statutory. *And if she makes a clear case for amercement under the statute, it is no defense against her claim that she had not been damnified.* The statute under which she proceeds is of a penal character; it affords a summary remedy, without trial by jury, for official delinquency; and without regard to the amount of damages resulting in fact from such delinquency, it leaves no discretion to the court as to the amount of the judgment to be rendered against the delinquent officer.' That the sheriff by his conduct in this case brought himself clearly within the terms of the statute is unquestioned. His counsel suggest nothing to the contrary, and we see nothing. True, no intentional wrong is shown; *but it is neglect, which the statute reaches and punishes,* and though it seems harsh and rigorous to impose the penalty, *yet there is the statute. Ita lex scripta est.* Its language is plain. Its meaning had been declared by the courts long before Kansas

was a state. *It grants no discretion. And it is as binding upon us as is any other command of the legislature.*"

The writer of this opinion will admit that he would like to set aside and to do violence to the plain language of the statute in question. The court, however, can only take such an action provided that it is sure that the language used, and as ordinarily construed, did not express the clear legislative intention and policy. What, then, are the two theories of such policy? In favor of leniency and a construction which shall do violence to the plain language of the statute is the argument of the supreme court of Nebraska in the case of Crooker v. Melick, 18 Neb. 227, 24 N. W. 689, that "it is the boast of our improved system of pleading and practice that the actual facts of every case may be pleaded and proved without regard to fictions or technicalities. This would be of little avail if, in cases like the one at bar, the law had closed the door of investigation, and ascribed to excusable neglect or unavoidable accident the same consequences of punishment and loss as those which follow criminal malpractice." And the argument in the case Smith v. Perry, 18 Tex. 510, 70 Am. Dec. 295, where the court says: "Temptation to seek to fix liability upon him will, of course, be in proportion to the difficulty of collecting the debt from the judgment debtor. In Kentucky, where it seems the insolvency of the defendant in execution has not been admitted as a defense under their statute, the court on one occasion remarked that executions have sometimes issued against men hopelessly bankrupt with no other design than to take advantage of some possible slip or omission of the officer of the law. . . . The officer ought not to be subjected to such perils and penalties for mere technical defaults, where no one has been injured, as that no discreet or judicious man would be willing to take upon himself the responsibility of the office. It cannot be supposed that the legislature intended, nor does the language of the statute require, a construction which would impose such penalties for the benefit of those who have not been injured by the dereliction of the officer. The primary object of the statute must have been to afford a redress for injuries. It could not have been intended to hold out a temptation and afford the opportunity to those who had sustained no injury, and consequently could have no real ground of complaint, to speculate upon the dereliction of the officer."

Another argument may be found in the suggestion of the court in the case of Smith v. Perry, supra, that the penalty could be collected even though the debt had been ultimately paid.

Opposed to these arguments, however, are the clear reading of the statute and the suggestion of Mr. Justice Brewer in the case of Bond v. Weber, 17 Kan. 410, that the statute does not say that he, the sheriff, *may* be amerced, but that he *shall be;* and on the ground of public policy the suggestions of the supreme court of Minnesota in the case of Breuer v. Elder, 33 Minn. 147, 22 N. W. 622, that "the procedure which the statute authorizes in cases of this kind is necessarily summary and rigorous. The courts must have control of their officers and power to compel the prompt and faithful execution of their processes. To permit an officer to whom judicial process is issued to set himself up as an independent authority, as such officers are sometimes inclined to do, and execute or not, at his pleasure and leisure or those of the judgment debtor, with impunity, would make the administration of justice a practical mockery."

Not only, indeed, does the plain reading of the statute seem to indicate this rule of absolute liability, but the nature of the summary proceeding which is provided for seems also to point to the same conclusion. It seems, indeed, inconceivable that if the legislature had intended an examination into the damages actually sustained and the value of the property which could or could not be reached by the execution, they would not have provided for a formal trial, and not for a mere summary proceeding.

It is true that some of the statutes which have been considered provide that the recovery shall be "the amount of the execution," and not, as does ours, that it shall be the amount of "the debt, damages, and costs." We can, however, see no distinction between these terms; nor is there any force in the argument of the supreme court of Texas in the case of Smith v. Perry, supra, that if the legislature had intended to enforce the duty as a public duty, it would have given the remedy to the state, and not to the individual, as such has not been the policy of our legislature. Section 6076, Compiled Laws of 1813, permits a debtor to recover twice the amount of the usurious interest charged, and the debtor is certainly not injured to this amount. Section 6749, Compiled Laws of 1913, provides for a forfeiture of $100 for the failure

to discharge a mortgage, and this in addition to the damages sustained. Jones v. Fidelity Loan & T. Co. 7 S. D. 122, 63 N. W. 553.

The rule of law may be harsh, but it is not of our making, and we are, as have been the courts of many other states, "reluctantly compelled, from a sense of duty, to tread in the path" which that legislature has made for us, and until such a time, if ever it shall be, when the body shall decree otherwise. Reid v. Dunklin, 5 Ala. 205.

The judgment of the District Court is affirmed.

### On Petition for Rehearing.

BRUCE, J. A petition for a rehearing has been filed in which our attention is called to the fact that we omitted to pass upon appellant's objection that "there was no evidence offered, excepting the statements contained in the affidavits of Alexander and Gilmore, that any judgment supporting the execution (which was annexed to and made a part of the affidavit of the latter) was ever entered or docketed." Counsel for appellant argues that "the amercement of an officer is a proceeding penal in its nature, and the statute authorizing it must be strictly pursued both in regard to the proceedings and the facts authorizing it." See Milburn-Stoddard Co. v. Stickney, 14 N. D. 282, 103 N. W. 752; Duncan v. Drakeley, 10 Ohio, 46; 36 Cyc. 1188. He also argues that "where an execution plaintiff seeks to amerce a sheriff for a default in respect to the execution of his writ, he must show a valid judgment and the execution must conform strictly to that judgment." 35 Cyc. 1889.

All this we may concede, but it is quite clear to us that the purpose of the statute was to award to the execution creditor a speedy and a prompt remedy, and without any unnecessary formality. It is perfectly true that in such an action the complainant may be required to make strict proof of the execution and the judgment, but surely he is not compelled to prove that which the defendant admits, nor, after judgment and in the supreme court, to raise questions as to the insufficiency of the evidence which were not raised before the trial judge. No point was raised in the trial court whatever on the question of the identity of the judgment. The affidavit of J. P. Alexander stated that on the 28th day of May, 1914, a judgment was duly rendered, entered, and docketed

in a certain action wherein Martin T. Lee was plaintiff and John J. Brugman was defendant, in the district court for the county of Mountrail, for the sum of $975.01, and that thereafter an execution was issued on this judgment and delivered to the defendant, James Dolan, etc. The defendant in his answer admits that the execution described in the plaintiff's application was duly issued on June 22, 1914, and delivered to the defendant for service. He then goes on to state that the defendant had no property subject to execution. Attached to this answer is an affidavit by the defendant in which he states "that on or about the 22d day of June, 1914, there was delivered to him as sheriff an execution issued upon a judgment theretofore entered against John J. Brugman as defendant and in favor of Martin T. Lee as plaintiff in this court." The affidavit then goes on to offer excuses why a return was not made on said execution. Nowhere in the answer nor in the affidavits is there any pretense that the execution was not regularly issued and on a judgment regularly entered against the said Brugman. The presumption is that the parties in the execution and in the judgment were the same. State v. Kilmer, 31 N. D. 442, 153 N. W. 1089. There is also a presumption that the court was acquainted with its records. There was certainly a prima facie case made and there was no attempt to dispute it.

A rehearing has also been asked on the question whether the construction of the statute according to its natural language and import, and as announced in the principal opinion, renders such statute violative of the following clauses of the Constitution of the state of North Dakota.

"Excessive bail shall not be required, nor shall cruel or unusual punishment be inflicted." N. D. Const. § 6, art. 1.

"All laws of a general nature shall have a uniform operation." N. D. Const. § 11, art. 1.

"No person . . . shall be deprived of life, liberty, or property without due process of law." N. D. Const. § 13, art. 1.

We are of the opinion that § 6 of article 1 is not violated. The recovery, though penal in its nature, is in no sense a fine, but merely the damages which the law adjudges to the individual as the consequence of the failure of an officer to discharge an official duty. See Porter v. Thomson, 22 Iowa, 391. The liability, though penal in its

nature, is not a punishment for crime. It is a condition upon the holding of the office, and a penalty not so much imposed, but agreed by the sheriff to be paid in the case of a failure of duty. The purpose of the statute is, it is true, to bring about a prompt and proper performance of duty. This, however, is accomplished not by the old means of technical amercement by which the officer was put *in misericordia* and in which case a fine was imposed upon him which was largely in the discretion of the court or of the jury (see Bouvier's Law Dict. 187, Notes to 2 C. J. 1319), but liquidated damages which the sheriff agrees to pay when he assumes office in case of a violation of his duty, and the liability for the payment of which results not only in the protection of the creditor, but in a proper discharge of the duties of the courts and of their officers and a consequent respect on the part of the public therefor.

The sheriff accepts office in short knowing of the statutes and of the results of a disobediance thereto, and his liability is accepted rather than imposed. Porter v. Thomson, supra. Such being the case, the constitutional provisions referred to do not apply, as they were intended to cover punishments rather than obligations, and to apply to what are commonly called criminal cases. Ex parte Watkins, 7 Pet. 573, 8 L. ed. 788.

It is to be noticed, indeed, that the Constitution of North Dakota makes no mention of penalties or obligations. It merely says that "cruel or unusual punishment" shall not be inflicted.

Even the provisions in the national Constitution upon the subject, and those which are to be found in the Magna Charta, cannot apply in cases of this kind. In the first place, the first ten Amendments to the Federal Constitution control Congress, and Congress alone, and not the legislatures of the several states. In the second place, the purpose of the framers of those instruments was to protect the individual against arbitrary and cruel legislative and judicial action, and against the tyranny of the courts, rather than to hamper those courts in the proper fulfilment of the duties which were imposed upon them. It was to restrain and control public officers, and for the protection of the people, rather than to excuse those public officers for remissness in duties. The constitutional provisions in short were for the protection of the people, and not for the protection of the legislatures or of the courts or their

officers. They were popular Bills of Rights; they were not official Bills of Rights. All that § 55 of the Magna Charta provided was that "illegal fines and amercements should not be insisted upon."

It is equally clear that the statute in question is not in violation of § 11, article 1, of the North Dakota Constitution, which provides that all laws of a general nature shall have a uniform operation. The statute applies uniformly to all sheriffs, and for reasons which are apparent makes a peculiar class of such officers. Classification is not necessarily class legislation. See Gunn v. Minneapolis, St. P. & S. Ste. M. R. Co. ante, 418, 158 N. W. 1004.

Nor is the statute in derogation of § 13, article 1, of the North Dakota Constitution, which provides that "no person shall : . . be deprived of life, liberty or property without due process of law."

No man has an inherent right to a public office nor can he be compelled to accept one. The legislature may therefore, except where restricted by the Constitutions, place upon the holding of a public office whatever obligations it pleases, and the applicant, by accepting the office, will be presumed to have accepted these conditions 'and obligations, and will be bound thereby.

Even if the statute were considered in the light of a criminal enactment, it would hardly be unconstitutional. It is true that for a small degree of moral turpitude a heavy penalty can be inflicted, and that the larger the judgment the greater that penalty is, and this though the neglect of duty is no greater in the case of the neglect to collect or return a large execution than a small one. This, however, does not invalidate the act. The word "cruel" as used in § 6 of article 1 of the Constitution of North Dakota, and as used in the Federal Constitution, has always been associated with physical pain and suffering. 2 Words & Phrases, 1765. There can be no claim that any physical suffering is involved in the penalty which is before us.

The only other word used is the word "unusual," and punishments or penalties such as that prescribed by the statute are not unusual. Punishments, indeed, which are based on the amount of the loss to the injured party, rather than on the degree of the moral turpitude of the offender, though unscientific, indefensible, and a survival of the age of personal vengeance and of "the eye for eye and a tooth for a tooth" theory of the law, are nevertheless everywhere to be found in our Codes,

34 N. D.—30.

and were to be found at the time of the adoption of the constitutional provision in question. They are not, and never have been, unusual.

We cannot invent constitutional provisions, nor can we set aside laws of our own initiative no matter how we may disapprove of them; and no matter how much we may disapprove of the personal vengeance and retributive theory of the criminal law, we must construe the constitutional provisions in the light of the thought which surrounded their enactment. Nor can we' call that unusual which in fact was, and still is, customary. The moral turpitude in the stealing of $20 is often as great and greater than that involved in the stealing of $20.01, and yet the latter offense is made by statute grand, and the former petit, larceny. Comp. Laws 1913, § 9916. Statutes have everywhere been sustained which have punished embezzlement by a fine of twice and even several times the amount embezzled, regardless of that amount. The officers of municipal corporations have been held personally liable for judgments for which they have failed to levy taxes. Double damages for stock killed and property converted are, and for a long time have been, quite commonly allowed. Mims v. State, 26 Minn. 494, 5 N. W. 369; Porter v. Thomson, 22 Iowa, 391; Missouri P. R. Co. v. Humes, 115 U. S. 512, 29 L. ed. 463, 6 Sup. Ct. Rep. 110; Ex parte Watkins, 7 Pet. 573, 8 L. ed. 788.

We see no reason for receding from our former order.