SHERMAN, Appellant v. UPTON, INC. et al., Respondents

(242 N.W.2d 666)

(File No. 11707. Opinion filed May 21, 1976)

Petition for rehearing denied July 1, 1976.

**Vincent J. Protsch, Mumford, Protsch, Sage & Pardy,** Howard, **Steven A. Carter, Carter & Blair,** Sioux City, Iowa, for plaintiff and appellant.

**Leon J. Vander Linden, Holland, Delaney & Vander Linden,** Webster, for defendants and respondents.

WINANS, Justice.

This is an action to amerce the Day County Sheriff and his deputy for failure to levy against property after receipt of a writ of execution delivered to the deputy. The trial court found in favor of the defendants and we affirm.

An amercement is a money penalty in the nature of a fine imposed upon an officer for some misconduct or neglect of duty. It is a statutory proceeding and must be strictly construed. Stein v. Scanlan, 1912, 34 Okl. 801, 127 p. 483. The case law in all the jurisdictions which we have examined is sparse and here in our own state we find relatively little on the subject. Amercement is a remedy which is of its very nature harsh. Were not the use of such a remedy rare and the grant of such relief strictly scrutinized, sheriffs and other public officers subject to amercement would serve at their peril. Bonding companies would

likewise, undoubtedly, find that standing surety for such officers would become a service to be offered only at high premium rates. Although we may not have been this explicit before, we find ourselves unequivocally in accord with the Oklahoma Court when it said that a statute

> "providing for the amercement of sheriffs and constables and being penal in its nature, is like all other penal statutes which are strictly construed, and held to apply only to default clearly within their terms, and a party who seeks to amerce a sheriff must bring himself both within the letter and the spirit of the law." First State Bank of Lovell v. Graybeal, 1934, 169 Okl. 543, 37 P.2d 912.

Similarly, the Mississippi Court with which we also agree, noted that

> "[w]herever, indeed, statutes of this character are found they are regarded as of a character so highly penal that very slight circumstances are held to exempt officers from their operation." W. T. Rawleigh Co. v. Hester, 1941, 190 Miss. 329, 200 S. 250.

The law on amercement in South Dakota is found in SDCL 15-21. SDCL 15-21-1 reads:

> "If any sheriff or other officer shall refuse or neglect to execute any writ of execution to him directed which has come to his hands; or to sell any personal or real property; or to return any writ of execution to the proper court on or before the return day; or, on demand to pay over to the plaintiff, his agent, or attorney of record, all moneys by him collected or received for the use of said party at any time after collecting or receiving the same, except as otherwise provided; or on demand made by the defendant, his agent, or attorney of record, to pay all overplus received from any sale, such sheriff or other officer shall, on motion in court upon two days' notice thereof in writing, be amerced in the

amount of said debt, damages, and costs, with ten per cent thereon to and for the use of said plaintiff or defendant, as the case may be."

■ In 1935 this Court in a terse per curiam opinion upheld a lower court finding that a sheriff could not be amerced for failure to make a return on an execution placed in his hands for levy where there was no property belonging to the judgment debtor in the sheriff's county subject to levy. Sioux Falls Corrugating Co. v. Gurius, 1935, 63 S.D. 385, 259 N.W. 275. It based its holding on Swenson v. Christoferson et al., 1897, 10 S.D. 188, 72 N.W. 459. In so doing it recognized that this was not the rule of some other jurisdictions, citing especially Lee v. Dolan, 1916, 34 N.D. 449, 158 N.W. 1007, a case which appears to take an extremely ominous view of defendant's liability and neither allows discretion to the court nor requires proof of damages by plaintiff. In contrast to Lee it is our view that defendant officers are to be favored and plaintiffs must exercise strict compliance with all pertinent laws, showing, *inter alia*, the fact and the extent of their damages.

■ Although the wording of our statute might seem to some to allow us no discretion we do not believe this is true. Were the words "shall ... be amerced in the amount of said debt" to mean that once a sheriff had refused for any reason to execute a writ amercement would be nearly automatic, a sheriff would then of necessity be forced to levy against any property in the county named by plaintiff regardless of the property's exempt status. This is clearly not our law and such has been a matter of record as far back as Swenson v. Christoferson, supra, where a sheriff was not amerced though he had returned an execution wholly unsatisfied because the property within the county claimed by the plaintiff was exempt. It is evident that in this jurisdiction at least the wording of the amercement statute is subject to both interpretation and flexibility.

The particulars of the case before us are briefly set out. Plaintiff Stan Sherman, d/b/a Sherman Produce Co., obtained a confessed judgment against Upton, Inc., a corporation, in the sum of $48,508.04 on July 6, 1973. It was entered by the court on July

12th. On August 23rd of 1974 an execution was signed by the Day County Clerk of Courts and Plaintiff's attorney contacted the Day County Deputy Sheriff requesting him to execute on personal property of Upton, Inc., in Webster, South Dakota. The Day County Sheriff at that time was hospitalized as the result of a heart attack. The deputy conferred with the state's attorney and checked for mortgages against Upton, Inc.'s property with the Register of Deeds. There the deputy found an indication that Security Bank and Trust Company had prior liens on Upton, Inc. The deputy and the state's attorney verified this with the bank and the deputy then returned the writ, well within the sixty days allowed for its execution, to Plaintiff's counsel, endorsed

"Sept 10, 1974

"I Have made a thorough search and found no property to levy on, therefore I am returning said execution wholly unsatisfied.

/s/ Michael Breske"

On November 4, 1974, an order to show cause in an amercement action was signed by the circuit court judge. The motion to amerce had been dated September 25, 1974. A hearing on Plaintiff's motion to amerce and on Defendants' motion to dismiss was held on November 25th at Webster, S.D., and briefs were filed by Plaintiff and Defendants subsequently. The court filed its memorandum decision on March 10, 1975 and entered judgment April 29, 1975, denying Plaintiff's motion to amerce and granting Defendants' motion to dismiss.

On appeal Plaintiff challenges the lower court's finding that the Security Bank and Trust Company had a prior perfected security interest in the property in question and that thus Defendants had no property against which to levy. Plaintiff also attacks a finding that Plaintiff's counsel did not assist in explaining the property upon which the levy was to be made. Finally, Plaintiff objects to the court's failure to find that Defendants were guilty of a willful and unlawful neglect and refusal to levy and consequently ought to be amerced.

■ As we have already noted, not every refusal to make a levy upon property following a writ of execution will automatically incur amercement. There might be justifiable cause for such conduct and a failure or refusal to make the execution in certain circumstances could invoke its own legal consequences, including penalties. Following our earlier holdings in Swenson, supra, and Sioux Falls Corrugating Co., supra, (see also Studebaker Bros. Mfg. Co. v. Zollars, 1899, 12 S.D. 296, 81 N.W. 292) we are of the opinion that if Defendants found no suitable property in the county upon which to levy after due and diligent search, and if Plaintiff directed them to none such within the time allowed for the execution of the writ, the trial court's decision must stand. This being the case, we must examine Plaintiff's claim that the trial court erroneously found the Security Bank and Trust Company to have perfected security interest in the property sought to be levied upon. If the judgment of the court below was correct, all property sought to be levied upon was totally encumbered and there was in fact nothing for the sheriff to execute against. This does no violence to the holding of the Pennsylvania Supreme Court that

> "[t]he true rule to be deduced from the authorities is this: that when the sheriff returns an execution *nulla bona* he does so at his own risk, and, if it is shown that there is property of the defendant which he might and ought to have levied upon, he will be responsible." Dornan v. McCandless, 1892, 146 Pa. 344, 23 A.245.

### Financing Statements

In attacking the validity of the bank's allegedly perfected security interests, Appellant asserts that neither the financing statements in question nor the security agreements between the parties meets the law's minimum requirements.

■ SDCL 57-38 sets out that section of the Uniform Commercial Code dealing with *"Secured Transactions—Form and Filing of Statements."* The sufficiency of the contents of a financing statement is dealt with in SDCL 57-38-7 which provides:

"A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. A financing statement may be filed before a security agreement is made or a security interest otherwise attaches. When the financing statement covers crops growing or to be grown or goods which are or are to become fixtures, the statement must also contain a description of the real estate concerned. A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by both parties."

We note that this must be read in light of SDCL 57-38-11:

"A financing statement substantially complying with the requirements of §§ 57-38-7 to 57-38-10, inclusive, is effective even though it contains minor errors which are not seriously misleading."

There are before us two financing statements. One is numbered 026562 and the other 026563. Both were filed with the South Dakota Secretary of State January 25, 1973, at 10:30 a.m. The former covers "[a]ll accounts receivables [sic], contracts and chattel paper, whatsoever, whether now owned or hereafter acquired." The latter covers "[a]ll inventory of every kind whatsoever, whether now owned or hereafter acquired, and all machinery, equipment, furniture and fixtures, whatsoever, whether now owned or hereafter acquired." The box provided for debtor on each is filled in:

"Upton, Inc.
Webster, South Dakota"

The box for secured party is filled in:

"Security Bank and Trust Co.
Webster, South Dakota"

In the space provided for signature(s) of secured party is found:

(typed) "SECURITY BANK AND
TRUST CO., WEBSTER, SD
By: (handwriting) R. H. Garry, Pres."

In the space provided for signature(s) of debtor(s) are found the handwritten signatures: "Rodney Upton, II
Janet T. Upton"

Appellant attacks the sufficiency of the financing statement because the signatures on the Uptons appear to be those of the signers as individuals rather than as corporate officers. While we acknowledge that better practice would call for some indication of corporate capacity to accompany each of the signatures we find that such an omission does not do violence to the notice-giving purpose of our law and that at worst such lack of precision can be marked down to the minor errors adverted to in SDCL 57-38-11 which are not seriously misleading. In so finding we refer to a Maryland case in which there is an issue similar to the one now before us, Plemens v. Didde-Glaser, Inc., 1966, 244 Md. 556, 224 A.2d 464, a case in which the sole question was

"whether the signature of Kenneth C. Slatkoff, without an indication that he signed [the financing statement] as an authorized representative of the debtor corporation named in paragraph 1 of the financing statement, was so defective as to constitute substantial noncompliance with the provisions of Article 95B."

The Maryland Court of Appeals found that "Mr. Slatkoff's signature on the line designated 'Signature of Debtor' indicates he was signing for the debtor. The name and address of the debtor is clearly indicated in paragraph 1 of the financing statement. * * * There is nothing in the evidence to indicate that any one searching the records would be misled by the fact that the signature did not relate the representative capacity of Mr. Slatkoff." That court found substantial compliance with the requirements of the UCC there as do we here. In so finding we are guided by the spirit of SDCL 57-1-4 (UCC § 1-102) which directs

that this title "shall be liberally construed and applied to promote its underlying purposes and policies." We also note that the comment accompanying § 9-402 [SDCL 57-38-11] of the UCC, subdivision (5), states that this subdivision "is designed to discourage the fanatical and impossibly refined reading of such statutory requirements in which courts have occasionally indulged themselves." We have no intention of going back into the morass of nit picking from which the UCC has refreshingly led us. It is evident that Upton, Inc. is in fact the debtor on both of these financing statements and ample notice is provided for those making a good faith search of the official records where further inquiry into the details of the listed financing may be directed.

### Security Agreements

▪Appellant has also denied the effectiveness of the security agreements in evidence. There are two transactions in question and for each of these apparently there were several executed security agreements. It suffices, however, if there is extant and before us one adequate agreement in each transaction. Appellant specifically attacks exhibits 5, 6 and 7. Exhibits 5 and 7 are security agreements covering

> "[a]ll inventory of every kind whatsoever, whether now owned or hereafter acquired, and all machinery, equipment, furniture and fixtures, whatsoever, whether now owned or hereafter acquired."

One of these documents is apparently a carbon of the other, but they have each been separately signed.

Exhibit 6 is a security agreement covering:

> "[a]ll accounts receivables [sic], contracts and chattel paper, whatsoever, whether now owned or hereafter acquired."

SDCL 57-36-3 requires the debtor's signature for a valid security agreement. Nothing is said of the debtor's seal nor of secured party's signature.

Exhibit 6 is signed:

"Upton, Inc.　　　　　　　"Security Bank & Trust Co.
/s/ Rodney Upton II　　　By /s/ R. H. Garry
　　　　　　　Pres.　　　　R. H. Garry, President
/s/ Janet T. Upton　　　　　　　　　　　(Secured Party)"
　　　　　Sec."

There appears to be no real question presented by this agreement. The signatures are not challenged and the corporate capacities of all signers are clearly indicated. To the extent that Exhibit 6, covering intangibles, is at issue in the instant case, we find Appellant's attack on it without merit.

Exhibit 5 is signed:

"/s/ Rodney Upton II
　　　Pres. (Debtor)
　　/s/ Janet T. Upton　　"By /s/ R. H. Garry
　　　　Sec. (Debtor)"　　R. H. Garry, President (Secured Party)"

Beneath Garry's name appears the corporate seal of Upton, Inc. The testimony of Mr. Garry is uncontroverted that he wrote in the titles "Pres." and "Sec." in the presence of the Uptons. Appellant challenges the sufficiency of all signatures for failure to indicate corporate capacity of either the Uptons or bank president Garry. We delay not with the assault on the Garry signature. Since our law does not require the secured party's signature on a security agreement it matters little how Mr. Garry signed it, though one should have little doubt on the subject taking into consideration the title "President" after his name, the *bank's* subsequent transfer of the document to the Small Business Administration, and the filed financing statement indicating both debtor and secured party quite clearly.

■ The use of the titles "Pres." and "Sec." following the signatures of the two Uptons are indicative of their intention to appear on these documents as corporate officers. The impression of the seal of Upton, Inc., on the same document in close proximity to their signatures can leave little doubt that the Uptons were

signing as officers of the corporation which bore their name and whose seal was affixed. It would be contrary to the spirit of the UCC to find that such clear indication of these two parties to sign in their capacity as corporate officers was inadequate to meet the demands of SDCL 57-36-3. Since there is at least one sufficiently executed copy of the security agreement, namely exhibit 5, in the record, and no more than one is required, we have no need to pass on the objections to exhibit 7 which is but a copy of exhibit 5. Appellant's objections to the validity of both security agreements thus fail.

### Further objections

The trial court found as fact:

"That the plaintiff and plaintiff's attorneys were fully advised of the above [deputy's decision to return the execution wholly unexecuted for want of finding property to levy upon] yet no action was taken by plaintiff or plaintiff's attorney to further assist the Deputy Sheriff in accomplishing what they were directing the Deputy Sheriff to do; this with full knowledge of the existing above facts."

Appellant cites this as prejudical error. We think that from the record the trial court's finding is well substantiated. Although there was still more than a month to run on the execution after Deputy Sheriff Breske returned it to Appellant's counsel during which time counsel could have examined the bank's prior perfected security interest more carefully or sought other remedies more directly against the debtor, Appellant chose to seek to amerce, a most drastic step and one which the trial court and this bench have found to be worthy only of dismissal.

We have found neither willful nor unlawful conduct on the part of either the sheriff or his deputy. The sheriff was incapacitated and had little control over the situation. The deputy exercised due diligence and carried out the duties of his office in responsible fashion, seeking the advice of the state's attorney and providing prompt return of the unexecuted writ with copies

of the pertinent documents on file and a full explanation of the reason for his conduct to Appellant's counsel. Whatever may be the conduct which our amercement statute was intended to penalize we cannot say that the conduct of either of the defendant officers in the case before us comes within its proscription.

The decision of the trial court is affirmed.

DUNN, C. J., and WOLLMAN, J., concur.

COLER, J., dissents.

COLER, Justice (dissenting).

Certainly amercement is a harsh remedy but I do not agree with the majority opinion in its overly strict scrutiny of the statute based upon the conjectured effect that it may have on persons seeking office or on a bond premium for public officers. The issue in this case, as I see it, is whether the sheriff, or the holder of either a perfected or unperfected security interest, is entitled to make a determination, on advice of their common counsel as to whether the property sought to be levied upon under an execution is exempt or immune from levy. This issue revolves around provisions found in SDCL 15-18 and the inter-relationship of that chapter to SDCL 57.

There is no question but what the judgment was properly entered and execution issued pursuant to SDCL 15-18. The property sought to be levied upon was subject to levy under SDCL 15-18-17 and to the extent the majority opinion deals with the collateral issue of effectiveness of the security agreement it is academic for it exonerates the officer who fails to make the levy only if the court later decides he was right in his belief that the security interest was perfected and covered the subject property.

The property sought to be made subject to levy is clearly available for that purpose under SDCL 15-18-17 which states that

"All property and interests therein and rights ap-

purtenant thereto, tangible or intangible, including shares or interest in any corporations, credits, choses in action, and whether capable of manual delivery or not, belonging to the party against whom the execution was issued, and not exempt by law may be taken on execution and sold or otherwise applied to the satisfaction of the judgment as provided by law."

The cross-references under that statute, though doubtless not all inclusive, list some ten statutory exemptions created by law, only eight of which now remain by virtue of various legislative enactments. The effect of the majority opinion is to add one more exemption without foundation in law.

The majority opinion, quoting from the official comment of the U.C.C. § 9-402(5), states that the U.C.C. has refreshingly led us from a morass of "nit picking." If to be rescued from this morass means that all property under the cloak of an ostensible security agreement is exempt to the detriment of all general creditors who pursue their claims to judgment only to be thwarted by a general lien filing covering all property of the debtor, it hardly strikes one as being refreshing.

The legislature of this state did not adopt the provisions of U.C.C. § 10-103[1] which would have, had it been enacted, repealed all laws in conflict with the U.C.C. and would have brought about not one code of laws of this state but two. By the adoption of what is now designated as SDCL 2-16-13, as last amended by Section 1 of Chapter 29 of the Session Laws of 1976, our laws are one code and no title is an island to be construed apart from the remainder of the code. I would hold that the sheriff was bound to proceed pursuant to SDCL 15-18-17. As was pointed out by appellant,

---

1.   The recommended provision of the U.C.C. for general repeal reads as follows:
    "§ *10-103. General Repealer.*
        Except as provided in the following section, all acts and parts of
    acts inconsistent with this Act are hereby repealed."
    The "following section" referred to in the above section, being § 10-104 relating
    to bailment and to the Uniform Act for the Simplification of Fiduciary Security
    Transfers, has no bearing to the issues here and is therefore not set forth.

prior provisions of law set forth in SDC 39.0414[2] did provide for the protection of the judgment creditor and the lienholder while making property subject to a chattel mortgage available to execution. Under those provisions there was no need to state exemptions or weigh relative priorities of liens. A search of the index of the U.C.C. does not reveal any sections which offset the provisions of SDCL 15-18-30 which reads as follows:

> "When the officer has made a levy upon any personal property pursuant to the provisions of this code, he shall have a lien thereon for all purposes essential to carrying out the execution, but no execution shall constitute any lien upon personal property until an actual levy upon such property has been made thereunder."

Indeed, this statutory lien is of a type not governed by Art. 9 of the U.C.C. See § 9-102(2), SDCL 57-35-3. Had the sheriff made the levy and made an inventory as required under SDCL 15-18 and sold the property and deposited the proceeds in court there would have been ample opportunity and a forum for judicial determination of the issue of perfection of the lien as was considered by the majority opinion and, perhaps, also whether the provisions of SDCL 57-37-47 through 57-37-52 applied to the meat products found in possession of Upton, Inc. The record before us does not reflect the use to which these products were put or whether it was appellant's products which were in the truck which respondent refused to levy upon. To intimate, as does the majority opinion, that the attorney for the judgment creditor failed to do something that he should have done is, in my opinion, not

2.   SDC 1939 39.0414 which was repealed, along with the rest of SDC 1939 Ch. 39.04, by section 10-102, Chapter 150, Session Laws of 1966, read as follows:
    "*39.0414. Attachment or execution on mortgaged property: rights of mortgagee; proceeds sale.* Personal property mortgaged may be taken under attachment or execution issued at the suit of a creditor of a mortgagor. Before the property is so taken, the officer must pay or tender to the mortgagee or his successor in interest the amount of the mortgage debt and interest, or must deposit the amount thereof with the county treasurer, payable to the order of the mortgagee. When the property thus taken is sold under process, the officer must apply the proceeds of the sale as follows:
    (1) To repayment of the sum paid on the mortgage with interest from date of such payment; and
    (2) The balance, if any, in like manner as the proceeds of sales under execution are applied in other cases."

justified upon the record.

I would reverse the judgment of the trial court and thus not render meaningless the amercement statutes found in SDCL 15-21 or the provisions of SDCL 15-18 providing for execution. I would leave the legislature its prerogative of specifically exempting from execution and levy property subject to a security interest if it is their intention to do so.[3]

---

3. Certainly, among the considerations of compatible law would be the lack of protection for the holder of a security interest under the current provisions governing proceeds of an execution sale under SDCL 15-19-35 hereafter set forth.

"15-19-35. It shall be the duty of every officer or person who conducts an execution sale to apply the proceeds of such sale:
(1) To the payment of the costs and expenses of the sale;
(2) To the satisfaction of the execution under which the sale is made;
(3) To the satisfaction of any other execution in his hands, to which such proceeds may be lawfully applied;
(4) To pay the surplus, if any, to the defendant, or into court for the use of the defendant or the person entitled thereto, subject to the order of the court. If such surplus or any part thereof shall remain in the court for the term of three months without being applied for, the court may direct the same to be put out at interest for the benefit of the defendant, his representatives or assigns, subject to the order of the court."