### In re NATIONAL DISCOUNT MUSIC, INC., Debtor.

**Bankruptcy No. 88-0546-6P1.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

June 19, 1989.

Andrea Ruff, Orlando, Fla., for debtor.

Thomas Egan, Orlando, Fla., for Chrysler First.

ORDER ON MOTION FOR RELIEF FROM STAY AND MOTION TO PROHIBIT USE OF CASE COLLATERAL

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matters under consideration are a Motion for Relief from Stay and Motion to Prohibit Use of Cash Collateral both filed by Chrysler First Diversified Credit, Inc. (Chrysler First), a creditor in the above-captioned case. It appears that the Debtor, National Discount Music, Inc., and Chrysler First have stipulated that there are no disputed factual issues and the following facts as they appear from the record are as follows:

At the time relevant to the controversy, the Debtor, National Discount Music, Inc., was a Florida corporation whose President and sole shareholder was an individual by the name of Richard Eldridge (Eldridge).

In June, 1987, the Debtor entered into an agreement with Chrysler First. Under this agreement, Chrysler First agreed to finance the Debtor's purchase of certain inventory from Rhythm Band, a distributor of musical equipment and accessories. Pursuant to the financing agreement, Eldridge executed a security agreement in favor of Chrysler First. The security agreement was signed by Eldridge, as President of the Debtor. In addition, underneath his signature, Eldridge affixed a certificate of the Debtor's corporation which authorized Eldridge to execute the security agreement as an officer of the Debtor.

Contemporaneously with that transaction, the Debtor also executed a Financial Statement (UCC-1). However, the UCC-1, while signed by Eldridge at the designated signature line for the debtor, there was no indication as to the capacity of Eldridge who signed the UCC-1. The UCC-1 did identify the corporation as the Debtor with its proper address in the appropriate places designated. In addition, the inventory which was covered under this UCC-1 was described with reference to the Security Agreement entered into between the Debtor and Chrysler First.

Between July, 1987, to March 15, 1988, the date the Debtor filed its Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code, the Debtor purchased inventory from Rhythm Band financed by Chrysler First. Pursuant to the security agreement entered into by the parties, the Debtor was required to remit certain payments to Chrysler First when each item was sold. To date, although the Debtor purchased and sold various items of inventory, it has not made any payments to Chrysler First.

On September 12, 1987, Chrysler First filed a second Motion for Relief from Stay and Motion to Prohibit Use of Cash Collateral, the motions presently under consideration. These motions were heard and the Court granted interim relief to Chrysler and ordered the Debtor to make weekly payments to Chrysler First based on the sales of the inventory. The Court withheld final ruling and took the matter under advisement as to the ultimate relief to be granted to Chrysler First pending resolution of the Debtor's challenge on the enforceability of the security interest claimed by Chrysler First. This challenge is based on the proposition urged by the Debtor that Chrysler First's attempts to perfect its security interest were fatally defective because the UCC–1 was signed by Eldridge as an individual and not in his capacity as an officer of the Debtor.

In order to perfect a security interest under Florida law, a secured party must comply with § 679.402, Florida Statutes, 1987, which provides, inter alia, that the secured party file with the Secretary of State of Florida, a financing statement which contains the names of the debtor and the secured party, is signed by the debtor, lists the address of the secured party and the debtor and contains a description of the collateral which is the subject of the security interest.

§ 679.402(7) of the Florida Statutes provides that the above formal requisites are not strictly construed and a financing statement which substantially complies with the requirements of this section is effective. The reasoning behind substantial compli-ance is that a financing statement does not in itself create a security interest but rather serves to provide notice to others who may be interested in providing financing or security to a particular debtor.

The issue of the sufficiency of the signature of an individual to bind a corporate debtor has been addressed by several cases on point. *Sherman v. Upton, Inc.*, 90 S.D. 467, 242 N.W.2d 666, (1976); *In re A & T Kwik–N–Handi, Inc.*, 12 U.C.C.Rep. 765 (M.D.Ga.1973); *In re Brocliff, Inc.*, 18 U.C. C.Rep. 1144 (W.D.Mich.1971); *In re Laskin*, 316 F.2d 70, 1 U.C.C.Rep. 262 (3d Cir.1963). In all of those cases, the respective courts determined that a signature of an individual was sufficient to bind the corporate debtor where there was evidence that the individual signer was, in fact, an officer of the corporate debtor or duly authorized by the corporate debtor to sign on its behalf.

This Court is persuaded by reasoning of the courts in these cases. It is undisputed that at the time he signed the UCC–1, Eldridge was, in fact, the President and sole shareholder of the Debtor and had the authority to bind the corporate debtor to the obligations incurred by the Debtor. Next, it is unlikely that a potential creditor who was searching the records of the office of the Secretary of State would be misled by Eldridge's signing of the UCC–1 and would not be put on notice of Chrysler First's security interest and did not intend to grant a security interest in the Debtor's inventory. The purpose of the UCC–1 simply is to put other creditors on notice as to the existence of a security interest in the collateral described in the UCC–1, and if this is accomplished, the security interest is properly perfected.

In the present instance, this Court is satisfied that the financing statement on UCC–1 satisfied the notice requirement of § 679.402 Florida Statutes and Chrysler First has a perfected security interest in the collateral of the Debtor.

A final evidentiary hearing shall be scheduled on July 10, 1989 at 10:30 a.m., to determine what the appropriate adequate protection should be ordered in order to

perfect the interest of Chrysler First in its collateral. Until such hearing, the Debtor shall comply with the Court's previous Order directing the Debtor to make adequate protection payments to Chrysler First.

DONE AND ORDERED.