**AMERICAN PULVERIZER COMPANY, Appellant,**

v.

**William J. CANTRELL and Kathleen Cantrell; Paul H. Salyer and Marcella Salyer, Appellees.**

Court of Appeals of Kentucky.

March 29, 1985.

Discretionary Review Denied and Opinion Ordered Published by Supreme Court Aug. 28, 1985.

J. Scott Preston, Paintsville, for appellant.

J.K. Wells, Wells, Porter, Schmitt & Walker, Paintsville, for appellees.

Before CLAYTON, LESTER and DUNN, JJ.

DUNN, Judge.

This appeal is from the Magoffin Circuit Court Judgment which determined that appellees', the Cantrells' and the Salyers', so called liens on certain personal property were superior to that of the security interest of the appellant American Pulverizer Company in the same personal property. We reverse and remand.

This appeal arises from a dispute over the priority of the proceeds of the sale of equipment for a coal tipple located at a rail site. As a part of this rail site a coal washing and preparation plant was constructed on real estate owned by appellees at one time.

The following chronological order of the transactions concerning the property is recited to hopefully expedite an understanding of this opinion:

1. June 14, 1975, real estate in question purchased by appellees;

2. June 18, 1975, they leased it to Energy Klenzing Systems;

3. Appellant American loaned $250,-000.00 to Energy Klenzing to build a coal washing and preparation plant on the real estate;

4. Having retained a security interest in certain equipment and machinery that Energy Klenzing was to use in the coal washing and preparation plant, on December 11, 1975, American filed a financing statement pursuant to KRS 355.9–402 with the Secretary of State and with the Magoffin County Clerk;

5. May 15, 1978, appellees sold the real estate to George Breathitt by an unre-

corded deed that retained a vendor's lien pursuant to KRS Chapter 382;

6. April 30, 1979, Breathitt sold the real estate to Energy Klenzing by an unrecorded deed obligating Energy Klenzing to assume Breathitt's debt to the appellees;

7. June 15, 1979, through a series of transactions Royalton Coal Processing Co. obtained the right to conduct coal preparation on the real estate;

8. July, 1980, appellees sued Breathitt and Energy Klenzing to recover $53,000.00 due on the original purchase price of the sale of the real estate to Breathitt;

9. October 29, 1980, judgment for appellees entered adjudging them to have a vendors' lien on the real estate for $53,000.00 and ordering the real estate to be sold by the Master Commissioner;

10. December 1, 1980, appellant American filed a continuation of its financing statement with the Secretary of State and with the Magoffin County clerk;

11. December 18, 1980, Royalton Coal Processing files suit to enjoin the master commissioner from selling the real estate and the trial court entered an order adjudging appellant American's security interest in the personal property to be inferior to appellees' vendors' lien on the real estate for some unexplained, illogical reason; and,

12. December 23, 1980, judicial sale of the real estate by the master commissioner is confirmed on appellees' bid of $29,000.00, leaving $24,000.00 of their $53,000.00 judgment unsatisfied.

Thereafter appellees' case was consolidated with the suit filed by Royalton. Eventually, on October 5, 1982, the trial court entered an order which determined that appellees had an uncharacterized lien on the coal preparation plant fixtures and equipment located on the real estate and ordered their sale to satisfy the $24,000.00 balance remaining on the October 29, 1980, original judgment and order of sale based on the vendor's lien on the real estate.

Appellant American intervened as a party defendant in November, 1982. Shortly thereafter, appellees successfully moved the trial court to order the sale of the weight scales located on the real estate to further satisfy the original vendors' lien judgment. The sale of the scales brought $17,000.00, leaving a deficiency judgment balance of $7,000.00.

In January, 1983, appellees filed an amended complaint, claiming $55,000.00 that they demanded the master commissioner tax as costs for the rental value of the real estate due to them by Energy Klenzing while the equipment in question had remained on the real estate pendente lite since its judicial sale. In the amended complaint appellees also demanded $28,582.34 due them from Energy Klenzing for labor and material used by appellees to prepare the property for the installation of the coal preparation plant. Having been ordered sold at judicial sale pursuant to the amended complaint, the equipment was purchased by appellant American for $54,000.00. The trial court on January 6, 1984, entered judgment ordering these proceeds to be paid to the appellees rather than to the appellant American. It is from this judgment this appeal was taken.

Appellant American in first arguing that the judgment of January 6, 1984, is invalid, maintains that the trial judge signed it on December 5, 1983, but that the clerk did not enter it until January 6, 1984, two days after the trial judge left office. It further concludes that the judgment is invalid because it was signed by a judge who was not in office at the time of its entry. We disagree.

CR 58(1) provides that the clerk, upon receipt of the signed judgment, shall note it in the docket as provided by CR 79.01. The notation constitutes the entry of the judgment which shall become effective at the time of notation. Here, the judgment was duly signed by the trial judge when he was in office and became effective when entered by the clerk, albeit after the judge left office.

We shall next consider the issue arising from the uncharacterized lien entered on

October 5, 1982. Its nature escapes us, but since it is based on appellees' contention that it resulted from the improvements they made on the real estate before they sold it—2 dams built and grading work—pursuant to a contract with Energy Klenzing, the only evidence of which is appellee Paul Salyer's testimony, they and the trial court think it a mechanic's lien.

■■■ The trial court erred when it determined the appellees had a lien on the basis of the improvements they made while they still owned the real estate. This concept is a stranger to the law. Even if it were not, the lien would have been on the real estate and so much of the personal property as had become fixtures by attachment to the land. As such they became part of the land and were already sold at its judicial sale. Finally, if the above reasons are not valid ones, the appellees failed to comply with the provisions of KRS Chapter 376 in asserting a mechanic's lien. The appellees' reimbursement for these improvements was in the purchase money they received when they sold the land to Breathitt.

Appellees are entitled to no priority as a result of the October 5, 1982, uncharacterized lien. The only priority they might have as far as encumbrance on the personal property in question is concerned, would be as a result of the resolution of appellant American's other arguments, the next of which is not readily resolved.

American maintains that its perfected security interest in the machinery and equipment used by Energy Klenzing in the coal preparation and washing plant is superior to whatever interest appellees may have had in the equipment and machinery. We conclude it could be.

The resolution of this argument necessitates the application of KRS Chapter 355.9, our version of the Uniform Commercial Code Article 9 on Secured Transactions.

Before a security interest in collateral attaches, a creditor (secured party) must enter into a security agreement with the debtor. KRS 355.9-204(1). A financing statement must be filed in order to perfect the security interest. KRS 355.9-302. The financing statement must be signed by the debtor and the secured party, contain the secured party's address from which information concerning the security interest may be obtained, give a mailing address of the debtor and also contain a description of the collateral covered.

Appellant American executed a security agreement with Energy Klenzing on December 11, 1975, at which time the security interest in the equipment attached. However, the security interest was not perfected because the financing statement filed by American was insufficient.

■■ The appellees assert, and the trial court found, that the financing statement filed by American was not signed by the debtor. The evidence establishes that the financing statement was signed by "Alexander Hutchings," an incorporator of Energy Klenzing and also a party to the security agreement. The record contains no evidence concerning Hutchings' authority to sign the statement on behalf of the corporation. The financing statement also gives no indication that Hutchings was signing in a corporate capacity.

■■ There are no reported decisions in Kentucky on this issue. Decisions from other jurisdictions are split on whether a signature affixed in an individual capacity suffices as a signature of the debtor for UCC 9-402, our KRS 355.9-402(1), purposes. However, in the cases which determined that a signature of an individual was sufficient to bind the corporate debtor, there was evidence that the individual signer was an officer of the corporate debtor or duly authorized by the corporate debtor to sign on its behalf. We are persuaded that an individual signature, with no indication of corporate capacity and no evidence that the signer was duly authorized to sign on behalf of the corporation, does not meet the "signature of the debtor" requirement of KRS 355.9-402(1). Therefore, appellant American's security interest in the equipment in question was not perfected. How-

ever, this conclusion is not dispositive of the ultimate issue.

Having already determined that the trial court erred in the matter of the October 5, 1982, uncharacterized lien on the personal property, we must apply KRS 355.9–313 to determine which party prevails on its claim for the proceeds of the sale of the equipment.

Appellees insist that an application of KRS 355.9–313 establishes their lien as superior. We disagree.

■ Subsection (1) of that statute makes it clear that no security interest may be retained in goods which become an integral part of the real estate. The evidence in this case establishes that at least a portion of the equipment and machinery are removable. On remand, the trial court must determine which items have become an integral part of the real estate, i.e., fixtures. Those items which are not fixtures but are removable, if included in the list of collateral in the financing statement, may be subject to appellant American's security interest.

■ With respect to fixtures, Subsection (2) of the statute determines priority. It provides that a security interest which *attaches* to goods before they become fixtures takes priority over the claims of all persons with an interest in the real estate except as stated in subsection (4) (emphasis added). Here there can be no doubt that the security interest to the equipment attached on November 21, 1975, when American executed the security agreement. See also KRS 355.9–204(1). There can also be no doubt that appellees were owners of the real estate at that time and thus had an interest in the real estate. Appellees' assertion that the collateral had already become fixtures at the time the financing statement was filed and the security interest attached, cannot be gleaned from the record. There is simply no evidence one way or the other to establish when the equipment and machinery became fixtures, if in fact they ever did. There was no specific factual finding by the trial court regarding whether any portion of the collateral secured by appellant American had ever become fixtures. The question of whether the collateral in question is a fixture is one of fact. *See e.g. Ellis v. McCormack*, 309 Ky. 576, 218 S.W.2d 391 (1949) and *see Tarter v. Turpin*, Ky., 291 S.W.2d 547 (1956) for the tests to be applied in determining whether an item is a permanent fixture.

■ On remand the trial court should find as matters of fact, whether the collateral in question became fixtures and if so, when. If the goods are not fixtures, then KRS 355.9–312(5)(c) applies and appellant American would prevail. If the goods are fixtures, but the security interest attached before they became fixtures, KRS 355.9–313(2) applies and appellant American would likewise prevail. If the goods are fixtures, but the security interest attached after they became fixtures, KRS 355.9–313(3) applies and appellees would prevail.

■ One last issue that requires discussion is the propriety of the trial court's finding that appellees were entitled to a lien for $55,000.00 on the real estate, after it was purchased at the judicial sale of December 30, 1980, for "rental" of the real estate by the Commissioner, who allegedly used it for storage of the equipment and machinery in question. While appellees may have had a claim against Energy Klenzing, the owners of the equipment at the time of the judicial sale of the realty, for Energy's failure to remove the equipment, we do not accept appellee's argument that the $55,000.00 should be taxed as costs. The commissioner has not made a claim for such a sum for his protection or for storage of the equipment pending the outcome of litigation. The authorities relied on by appellees for the proposition that the Commissioner is entitled to charge the court $55,000.00 as an expense for the rental of the real estate on which the personalty was situated are factually or legally distinguishable. Appellees do not cite nor do we know of any authority by which the trial court could properly tax this amount

as cost and we conclude that it was error to do so.

For the foregoing reasons that portion of the judgment of the trial court taxing the "rental" value of the real estate as costs is REVERSED. Otherwise, the case is REVERSED and REMANDED for proceedings consistent with this opinion.

All concur.