### In re GRIEB PRINTING COMPANY, Debtor.

Bankruptcy No. 98–30775(3)7.

United States Bankruptcy Court,
W.D. Kentucky,
Louisville Division.

March 1, 1999.

Jerry O. Payne, Louisville, KY, for Debtor.

Thomas V. Askounis, David A. Wargula, Allen L. Morris, Jeffersonville, IN, for Bayer Financial Services.

J. Baxter Schilling, Louisville, KY, trustee.

## MEMORANDUM OPINION

DAVID T. STOSBERG, Chief Judge.

This matter arises from the Motion of the Bayer Corporation, d/b/a Bayer Financial Services ("Bayer") for relief from the automatic stay concerning various pieces of equipment ("Equipment") in which Bayer claims either an ownership or security interest. The Equipment was part of the Debtor corporation's printing operation. The Debtor's Chapter 7 Trustee objected to Bayer's Motion on two grounds:

1) the agreement between the Debtor and Bayer was a conditional sales agreement, not a true lease; and

2) Bayer did not properly perfect its security interest in the equipment by failing to obtain a valid signature on the UCC–1 financing statement.

### Facts

On or about October 11, 1997, the Debtor executed a lease of Equipment with Bayer ("the Lease"). The Lease was for 48 months with a payment of $4108.71 per month and gave the Debtor the option to purchase the Equipment at the end of the Lease for one dollar. The Lease, which was executed by the Debtor's CEO, granted Bayer a security interest in the Equipment and authorized, "[L]essor (Bayer) or its agents or assigns to sign and execute on its behalf any and all necessary documents to effect any such filing as aforesaid (including the filing of any such financing or continuation statement) without further authorization of Lessee." *Lease* at paragraph 14.

On October 16, 1997, Bayer filed a financing statement on the Equipment. Bayer signed the financing statement on behalf of the Debtor, without Bayer requesting the Debtor sign it. Other than the validity of the Debtor's signature, the Trustee concedes the financing statement was properly filed by Bayer.

Approximately five months after obtaining the Equipment, the Debtor filed a Chapter 7 bankruptcy petition. Shortly thereafter, the Debtor's Chapter 7 bankruptcy Trustee

moved to sell the Debtor's personal property, including the Equipment in which Bayer claimed an interest. In response, Bayer filed the motion for stay relief along with other motions to stop the Equipment from being sold. Ultimately, the Trustee and Bayer agreed to sell the Equipment and escrow approximately $62,500.00 in proceeds in a separate interest bearing account with the Trustee pending resolution of this matter.

### Analysis

■ The initial legal issue before the Court is whether the signature Bayer placed on the financing statement for the Debtor constituted a valid signature of the Debtor. Under Kentucky law, as set forth in *American Pulverizer Co. v. Cantrell*, 694 S.W.2d 714 (Ky.App.1985), if a financing statement is not signed by an individual authorized to sign on behalf of a corporate debtor, the filing is invalid and the secured parties' security interest in the collateral is unperfected. *Id.* at 717.

In this case, the Trustee argues that the signature on the financing statement is not a valid signature of the Debtor for three separate, but related reasons:

1) The Lease did not grant a power of attorney to Bayer or otherwise authorize Bayer to sign the financing statement on behalf of the Debtor;

2) The power of attorney granted to Bayer by the lease was invalid because it was not recorded in compliance with KRS 382.370; and

3) Bayer did not act within the scope of its power of attorney or authorization by signing the financing statement without first requesting the Debtor to sign the financing statement.

For the reasons set forth below, this Court finds the Trustee's arguments to be without merit.

The Trustee first argues that in order for Bayer to be authorized to sign the financing statement on behalf of the Debtor, the Debtor was required to have granted Bayer a "power of attorney" for such purpose. The Trustee grounds this argument on the notation on the financing statement under the Debtor's signature stating that Bayer signed the financing statement for the Debtor as the Debtor's "attorney-in-fact". From this notation, the Trustee concludes that Bayer cannot claim, under the authority of *American Pulverizer v. Cantrell*, 694 S.W.2d 714 (Ky. Ct.App.1985), that it was merely authorized to execute the financing statement for the Debtor, but instead must prove that a formal power of attorney between the parties exists. The Trustee then demonstrates that no valid "power of attorney" was executed by the Debtor in favor of Bayer.

The Trustee's argument fails because its basic premise, that Bayer must have a power of attorney to sign the financing statement, is flawed. Although there is dearth of law on the subject, we can find no general requirement that debtors must grant a power of attorney to authorize the creditor to sign financing statements on a debtor's behalf. Neither KRS 355, which codifies the Uniform Commercial Code in Kentucky, nor the *American Pulverizer* case require such a formality. The mere fact that Bayer used the designation "attorney-in-fact" to disclose that it was authorized to execute the financing statement for the Debtor does not impair the validity of the Debtor's signature.

■ In this case, it is undisputed that the Debtor expressly authorized Bayer to sign the financing statement on behalf of the Debtor. Bayer clearly, if inartfully, represented its agency relationship to the Debtor by its designation of the Debtor's signature. *See Provident Finance Co. v. Beneficial Finance Co.*, 36 N.C.App. 401, 245 S.E.2d 510, 514 (1978) ("Because financing statements only perform a notice function, we believe that any agency status should be obvious on the face of the Financing Statement.").

The Court finds this case is easily distinguishable from the *American Pulverizer* decision so heavily relied upon by the Trustee. In *American Pulverizer v. Cantrell*, 694 S.W.2d 714 (Ky.Ct.App.1985), there was *no evidence* that the incorporator of the corporate debtor was authorized to sign a financing statement on behalf of the corporate debtor. *Id.* at 717. The total lack of evidence as to the extent of the signer's corporate authority, rather than the lack of formal

documentation of that authority, defeated the creditor's claim in *American Pulverizer.* As noted by the leading treatise on the UCC in Kentucky, Leibson & Nowka, *The Uniform Commercial Code of Kentucky* (1997), "[W]e believe that if a secured party proves that the signer was an officer of the corporation or authorized to sign on behalf of the named debtor, the individual signature of the agent should suffice as the signature of the debtor." *Id.* at 808.

Based upon the foregoing, we hold that the Debtor's signature on the Financing Statement, as executed by Bayer, was a valid signature for purposes of Kentucky's version of the UCC.

The Trustee's second argument against the validity of Bayer's security interest is that KRS 382.370 requires that the "power of attorney" used to "convey" the security interest to Bayer (i.e. the Lease) be recorded with the Financing Statement in order for the Debtor's signature to be valid.

This court disagrees with the Trustee's logic. First, as noted above, Bayer was not granted a formal power of attorney by the Debtor to sign. However, the Debtor did expressly authorize Bayer to sign the Financing Statement on its behalf. Therefore, KRS 382.370 does not apply to the Lease's authorization by its own terms. Second, as noted by Bayer's counsel, the Financing Statement, in and of itself, does not transfer any interest in property for purposes of KRS 382.370. Therefore, the Court finds that the "failure" of Bayer to record the Lease does not effect the validity of the Debtor's signature on the financing statement.

Finally, the Trustee argues that under the provisions of the Lease, Bayer was only authorized to sign the Financing Statement "if [the Debtor] failed to sign such a financing statement after being requested to do so by Bayer." This contention is rebutted by the above quoted language of the Lease which authorized Bayer to sign the financing statement on behalf of the Debtor without precondition.

The Court construed Trustee's three-pronged attack on the financing statement in light of the underlying purposes and policies of the Uniform Commercial Code as set forth in KRS 355.1–102:

(a) to simplify, clarify and modernize the law governing commercial transactions;

(b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties;

(c) to make uniform the law among the various jurisdictions.

Further, KRS 355.1–102(1) provides, "that this Chapter shall be liberally construed and applied to promote its underlying purposes and policies." *See also Banque Worms v. Davis Construction Company, Inc.,* 831 S.W.2d 921 (Ky.Ct.App.1992); *Riley v. Miller,* 549 S.W.2d 314 (Ky.Ct.App.1977). Bayer clearly intended to comply with the overall purpose of the UCC to notify all interested parties of the security interest. The interpretation espoused by the Trustee would not only defeat these policies but also produce an unduly harsh result.

### Conclusion

Based upon the above findings of fact and conclusions of law, this Court has, by separate Order, directed the Trustee to pay the escrowed proceeds to Bayer.