In the Matter of NEWKIRK MINING
CO., Bankrupt.

No. 26973.

United States District Court
E. D. Pennsylvania.

Dec. 16, 1964.

quantities of coal silt, slate and refuse material produced by the bankrupt lessee and deposited by it on lessor's premises prior to the bankruptcy.

Under a ten year renewable lease executed in 1956, Newkirk Mining Company, the bankrupt lessee, extracted coal from lessor's lands by deep mining and stripping operations until September 21, 1961, on which date Newkirk was adjudicated a bankrupt on its voluntary petition in this court filed on the same day. During this period, Newkirk also deposited on lessor's lands certain silt, slate and refuse material which were accumulated during the coal mining operations. Substantial quantities of this material, commonly referred to in the coal mining business as slush dams, were sold by Newkirk and removed from lessor's land during the term of the lease. Although the lease did not state specifically who, as between the lessor and the lessee, had title to the slush dams during the term of the lease, the action of the parties indicates that they regarded the lessee as the owner. During the period from the beginning of the lease to the date of the bankruptcy, the lessee sold quantities of this material and retained the proceeds. The lessor did not object to this and it makes no contention now that it owned the slush dams prior to the bankruptcy or that it is entitled to the proceeds.

The question of the ownership of the material, which had not been removed prior to the filing of the petition in bankruptcy, creates the dispute in this case.

Fred C. Pace, Mahanoy City, Pa., for trustee.

John J. Curran, Pottsville, Pa., for Reading Anthracite Co.

Burke, Bowe, Dolbin & Heffner, Tamaqua, Pa., for petitioner.

GRIM, District Judge.

A lessor of certain coal bearing lands has petitioned this court to review the bankruptcy referee's order permitting a trustee in bankruptcy to sell free and clear of any interest of the lessor certain

The lease granted to Newkirk

" * * * the right and privilege of depositing slate, refuse, dirt and silt * * * upon the premises herein demised * * * provided, however * * * that all of said slate, refuse, dirt and silt remaining anywhere upon the demised premises * * * shall, upon the termination of this lease, be and remain the property of Lessor."

The decision in the case must turn on the effect of the bankruptcy on the lease

and the landlord-tenant relationship created by the lease.

Section 70, sub. b of the Bankruptcy Act [1] provides that

"[t]he trustee shall assume or reject an executory contract, including an unexpired lease of real property, within sixty days after the adjudication or within thirty days after the qualification of the trustee, whichever is later. * * * Any such contract or lease not assumed or rejected within that time shall be deemed to be rejected. * * * "

The trustee in this case did nothing to accept or reject the lease; therefore in accordance with the provisions of the statute, the lease is deemed to have been rejected.

The lessor contends that the rejection of the lease by the trustee constituted a termination of the lease as of the date of the filing of the petition in bankruptcy, which termination, it is contended, brought into play the above-mentioned section of the lease providing that upon termination the ownership of the materials on the premises would revert to the lessor. The trustee, on the other hand, contends that the rejection by the trustee did not constitute such a termination.

It is clear that a specific provision in a lease to the effect that the bankruptcy of a lessee will terminate the lease, is enforceable.[2] However there is no such provision in the lease in the present case.[3]

Likewise, it seems clear that the rejection of the lease by the trustee did not terminate the lease. As succinctly stated in Collier on Bankruptcy,

"[t]he weight of authority has always been to the effect that bankruptcy, unless expressly otherwise provided, does not sever the relation of landlord and tenant and that a rejection by the trustee of a bankrupt lessee does not, in and of itself (as distinguished from a surrender by mutual consent) terminate the lease." [4]

In the case of In re Kreiger, 15 F.2d 90 (W.D.Pa.1926) aff'd sub nom. Sproul v. Help Yourself Store Co., 16 F.2d 554 (3d Cir.1926), it was said by Judge Thomson of the District Court, 15 F.2d at 91, 92:

"A trustee in bankruptcy, at his option, may assume or reject the lease of the bankrupt * * *. If he elects to take the leasehold, he takes it * * * subject to the burdens resting upon the debtor * * * In this event the bankrupt is relieved from liability for any future rent. The trustee takes no title to the lease unless he elects to accept it. The property which passes, therefore, immediately to the trustee, is not the lease itself, but the option of accepting it. If the trustee renounces the lease, the relation of landlord and tenant still subsists as before the bankruptcy, and the bankrupt's dis-

---

1. 11 U.S.C.A. § 110, sub. b, as amended, 76 Stat. 571 (1962).

2. Section 70, sub. b, of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. b, as amended, 76 Stat. 572 (1962).

3. The only provision in the lease with regard to bankruptcy is contained in Covenant 15 of the lease which provides that "no judicial or other sale or transfer of any kind whatever, whether voluntary or involuntary and whether upon or under any writ, order or decree issued by or out of any court * * * or any proceeding in bankruptcy shall have the effect of transferring the interest or title of the Lessee in or to

the estate herein demised * * * without the written consent of the Lessor, first had and obtained." For an example of a specific covenant effectively terminating a lease in the event of bankruptcy, see C. D. Stimson Co. v. Porter, 195 F.2d 410, 412 (10th Cir. 1952). No contention is made that this paragraph prevented a transfer of title to the slush dams to the trustee without the lessor's consent.

4. 4 Collier on Bankruptcy § 70.44(2) 14th Edition (1962); See Walters v. Coen, 223 La. 912, 67 So.2d 175 (1953); Rosenblum v. Uber, 256 F. 584, 590 (3d Cir. 1919).

**4**

charge does not release him from his obligation to pay the rent. * * *"

And in a case involving the question of the status of a lease when it has been rejected by a trustee in bankruptcy of the lessee, Judge Kalodner said In re Gravure Paper & Board Corp., 234 F.2d 928 at 930 (3d Cir. 1956):

> "* * * It is well settled that '* * * when the trustee in bankruptcy abandons an asset, he is to be treated as having never had title to it; the abandonment is said to relate back, so that the title stands as if no assignment had been made.'"

 In summary, there is no clause in the lease automatically terminating the lease upon the bankruptcy of the lessee and also the rejection of the lease by the trustee did not terminate the lease. In fact there is nothing in the record to indicate that the lessor has even attempted to exercise his rights under the lease [5] unilaterally to terminate the lease. It follows therefore that the lease provision providing that title to the slush dams would revert to the lessor upon "termination" of the lease does not apply to the situation in the present case.

 Accordingly, when the petition in voluntary bankruptcy was filed, the lease was still in effect and the slush dams were the property of the lessee. Since these slush dams are personal property [6] of the bankrupt lessee, which "prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process * * *", the trustee by operation of law has been vested, as of the date of the filing of the bankruptcy petition, with title to the slush dams superior to any interest of the lessor.[7] The same result is reached if the trustee is deemed vested under Section 70, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. c, with title to such property as a hypothetical lien creditor could attach as of the date of bankruptcy.

 As an alternative argument, lessor asks the court to find that the trustee abandoned the slush dams as an asset of the bankruptcy estate. In support of this argument, lessor points out that the slush dams were not listed in the inventory, that the lease under which bankrupt's rights in this personal property arose was rejected by the trustee, and that the petition to sell these slush dams was not filed until approximately five months after the rejection of the lease. This contention must likewise be rejected. Although the Bankruptcy Act does not require any particular method or degree of formality for the abandonment of assets by the trustee, it is essential that there be a clear and unambiguous manifestation of such an intention to abandon on the part of the trustee.[8] Neither the mere passage of five months time, nor the failure to list the slush dams in the inventory,[9] nor the rejection by the trustee of the lease of the real estate, can be considered a clear and unambiguous manifestation of an intention to abandon this personal property.

The bankruptcy referee dismissed the lessor's objections to the trustee's petition to sell the coal material clear of claims of the lessor. In this he was correct. The petition for the review of the Referee's order must be denied.

---

5. Under the provisions of the lease either party could terminate the lease upon ninety days written notice to the other party. The lease further granted to the lessor the option of terminating the lease upon failure of the lessee to comply with any of the conditions of the lease. There is nothing in the record to indicate that the lessor even to the present day has taken any action under these provisions to terminate the lease.

6. Gilberton Coal Co. v. Schuster, 403 Pa. 226, 169 A.2d 44 (1961).

7. Section 70, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. a(5).

8. See discussion and cases cited in 4 Collier on Bankruptcy, § 70.42(3), 14th Edition (1962).

9. Counsel for the trustee informed the court at the oral argument on this petition for review, that an amended inventory listing the slush dams as an asset has been filed.