PROVIDENT FINANCE COMPANY v. BENEFICIAL FINANCE COMPANY

No. 778DC481

(Filed 6 June 1978)

1. **Uniform Commercial Code § 75— filing of financing statement—priority of interests**

   Loans from plaintiff and defendant to borrowers were governed by former G.S. 25-9-312(5) and plaintiff's security interest in the borrowers' property had priority over defendant's interest where borrowers executed a promissory note and security agreement in favor of plaintiff on 1 December 1973; plaintiff filed a financing statement on 20 December 1973; the debt was paid in full on 8 November 1974; no termination statement was filed; defendant made a loan to borrowers on 31 December 1974 without requiring borrowers to obtain a termination statement; defendant filed a financing statement on 3 January 1975; plaintiff made new loans to borrowers on 11 July and 1 December 1975 and on 3 July 1976; and plaintiff relied on the financing statement filed 20 December 1973.

2. **Uniform Commercial Code §§ 4, 73— financing statement—typed name not a signature**

   Where there is nothing whatsoever on the face of a financing statement to suggest that the debtor "adopted" his typed name as his signature, the debtor has not signed the financing statement as required by G.S. 25-9-402, and that financing statement is ineffective; therefore, plaintiff had priority interest only as to the property interest of the borrower wife in those items listed in a financing statement and not as to the property interest of the borrower husband, since the husband's name was typed on the financing statement but he did not sign the statement, and there was no indication that the wife signed the statement as his agent.

3. **Bankruptcy § 2; Uniform Commercial Code § 73— interests in secured property—bankruptcy of debtor—jurisdiction to determine interests**

   In an action between lenders to determine their interests in secured property where the evidence shows that borrowers have filed a petition in bankruptcy, the action should be dismissed for lack of jurisdiction, unless the parties can offer facts to show abandonment of the property by the trustee in bankruptcy, since the bankruptcy court is the only court having jurisdiction to adjudicate the rights of the parties, absent an abandonment by the trustee.

APPEAL by defendant from *Exum, Judge*. Judgment entered 14 April 1977 in District Court, LENOIR County. Heard in the Court of Appeals 9 March 1978.

The essential facts are these: On 1 December 1973 Norman Carlyle and Janette Carlyle (Norman Carlyle's wife) executed a promissory note and security agreement in favor of plaintiff, Provident Finance Company. The security agreement pledged

certain items of houshold furnishings as collateral. The agreement did not provide for future advances. A financing statement was prepared and was signed by plaintiff, the creditor, through its agent and by Janette Carlyle and was properly filed 20 December 1973. After having been refinanced at least once, the debt was paid in full on 8 November 1974. No termination statement was filed.

On 31 December 1974, defendant, Beneficial Finance Company, made a loan to the Carlyles. The parties executed a security agreement, again pledging as collateral some of the very same property pledged as collateral in the security agreement with plaintiff. Again, a financing statement was prepared and was signed by defendant, the creditor, through its agent and by both Norman Carlyle and Janette Carlyle and was properly filed 3 January 1975.

On 11 July 1975, 1 December 1975, and 2 July 1976, plaintiff made new loans to the Carlyles. New notes and security agreements covering the same collateral first pledged in 1973, were executed, but plaintiff relied upon the 20 December 1973 financing statement.

The Carlyles filed a petition in bankruptcy 23 September 1976. At that time, the Carlyles owed the plaintiff approximately $940 and the defendant approximately $1500. On 30 September 1976, defendant seized the property covered by its security agreements and financing statements. Plaintiff commenced this action by the filing of a verified complaint on 11 October 1976, seeking possession of the collateral. Both parties submitted motions for summary judgment supported by affidavits. By order of 14 April 1977, the trial court entered summary judgment in favor of plaintiff. From that order, defendant appeals alleging error in the court's failure to grant its motion for summary judgment as well as in the court's granting plaintiffs' motion.

*Walter Ray Vernon, Jr., for plaintiff appellee.*

*Gerrans & Spence, by William D. Spence, for defendant appellant.*

MORRIS, Judge.

We will first discuss the rights of the parties to the property. Our analysis will entail answering two questions: (1) Which creditor has priority? (2) What property, if any, is covered in the financing statements?

[1]   Defendant, Beneficial Finance Company, argues that it has priority. Defendant argues first that the financing statement given to plaintiff became ineffectual as soon as the original indebtedness was paid, but, even if we reject that position, defendant still should prevail because plaintiff's employees represented that the original debt had been paid. Defendant basically ignores Article 9 of the Uniform Commercial Code which governs this case. (There have been amendments to Article 9, some of which apply in this case and some of which do not apply.)

The security interest of both parties in this case must be perfected, if perfected at all, by the filing of a financing statement. G.S. 25-9-302. It appears that both parties have an "attached" security interest under G.S. 25-9-203. It also appears that, pursuant to G.S. 25-9-302, both parties have perfected these security interests by filing financing statements in proper form and in the proper offices. Thus, we determine the priority of their interests under G.S. 25-9-312. More precisely, all loans, except the 2 July 1976 loan, are governed by "old" G.S. 25-9-312(5) which provides in pertinent part that "priority between conflicting security interests in the same collateral shall be determined . . . in the order of filing if both are perfected by filing, *regardless of which security interest attached first under § 25-9-204(1) and whether it attached before or after filing. . . .*" (Emphasis added.) It would be difficult to conceive language which would more expressly reject defendant's argument.

The official comment to section 25-9-312 offers the following example:

"Example 1. A files against X (debtor) on February 1. B files against X on March 1. B makes a non-purchase money advance against certain collateral on April 1. A makes an advance against the same collateral on May 1. A has priority even though B's advance was made earlier and was perfected when made. . . ."

In this case, plaintiff filed on 20 December 1973. Defendant filed on 3 January 1975. Defendant made a loan to the Carlyles on 31 December 1974 which was perfected on 3 January 1975 by the filing. Plaintiff made loans on 11 July 1975 and 1 December 1975, which were perfected at the time the loans were made. Plaintiff clearly has priority, however, because plaintiff was the first to file.

Defendant argues that the 20 December 1973 financing statement was terminated by the payoff of the original loan since the original security agreement did not provide for future advances. The termination provisions in effect at the times relevant to this case provide that a financing statement specifying no maturity date "is effective for a period of five years from the date of filing." G.S. 25-9-403(2). One could terminate prior to that time by filing a termination statement which would "remain in the file for such period of time as the financing statement . . . would be effective under the five year life provided in § G.S. 25-9-403 . . . ." G.S. 25-9-404 (now amended). The debtor was protected by the requirement that

> "[w]henver there is no outstanding secured obligation and no commitment to make advances . . . the secured party must *on written demand by the debtor* send the debtor a statement that he no longer claims a security under the financing statement . . . ." (Emphasis added.) G.S. 25-9-404 (now amended).

Defendant urges this Court to engraft upon the statute by judicial decision additional termination provisions. Defendant relies upon *In re Hagler*, 10 UCC Rep. Serv. 1285 (U.S.D.C. E.D. Tenn. 1972), and *Coin-O-Matic Service Co. v. Rhode Island Hospital Trust Co.*, 3 UCC Rep. Serv. 1112 (R.I. Super. Ct. 1966), to support his argument. These two cases, however, are clearly in a minority. The minority position was discussed and was expressly rejected by the Review Committee for Article 9 of the Permanent Editorial Board for the Uniform Commercial Code on page 115 of its 25 April 1971 Final Report. This position has also been criticized by major commentators. Bender's Uniform Commercial Code Service discusses Coin-O-Matic by name and rejects the case. P. Coogan, W. Hogan, and D. Vagts, Bender's Uniform Commercial Code Service. Vol. 1, § 3A.03[1][b]. We believe that it is unnecessary for this Court to involve itself in a detailed analysis

of this problem. We align ourselves with the majority for two reasons. First, we believe the majority position is the correct one. There are adequate safeguards for the debtor: (1) He must sign the financing statement. (2) He has the five-year automatic cutoff. (3) He can demand and file a termination statement. The majority position is not unlike the position our courts have taken to strengthen our real estate recording statute. Second, the legislature rewrote G.S. 25-9-404 in 1975. The legislature placed upon the creditor the duty of *filing* the termination statements. A $100 penality plus liability for all losses is now imposed on creditors who fail to file the termination statements. *However*, the legislature specifically chose to retain the requirement that the *debtor must first request in writing* the termination state-ment. G.S. 25-9-404(1). We believe that this legislative action is an implicit rejection of defendant's argument.

Also, we note that the legislature has amended G.S. 25-9-312 in such a manner that the present results might be different under the new statute. However, the legislature specifically pro-vided that priorities fixed under "old" Article 9 prior to 1 July 1976 would not be altered by the new statute. G.S. 25-11-107.

Defendant also argues that plaintiff no longer has priority because plaintiff's employee informed defendant that the Carlyles had paid off the 1973 debt. This representation was obviously true. The real problem is that defendant either misunderstood or ignored the law. It would have been a simple matter for defend-ant to have required the Carlyles to obtain a termination state-ment prior to making the loan. Plaintiff would have been required by law to furnish the Carlyles such a termination statement. Defendant had more than ample opportunity to protect itself at little or no cost. Defendant failed to do so. We will not undermine the integrity of the notice filing system established under the U.C.C. to aid lenders who disregard the law and fail to help themselves. Thus, we conclude that plaintiff has a perfected security interest and that plaintiff's security interest has priority over defendant's security interest.

The remaining loan by plaintiff, made on 2 July 1976, is governed by "new" Article 9. Specifically, it is governed by "new" G.S. 25-9-312(7) which provides that "[i]f future advances are made while a security interest is perfected by filing . . . , the security

interest has the same priority for the purposes of subsection (5) with respect to the future advances as it does with respect to the first advance. . . ." The record reveals that the 2 July 1976 loan was made while plaintiff's security interest in the property, by virtue of the 1 December 1975 loan, was perfected. Thus, under "new" G.S. 25-9-312(7), the 2 July 1976 advance would take the same priority as the 1 December 1975 advance. As we have stated previously, the 1 December 1975 loan has priority [under G.S. 25-11-107 and "old" G.S. 25-9-312(5)], over defendant's loan. Therefore, the 2 July 1976 loan will also have priority over defendant's loan.

[2]    Next, we must determine in which property plaintiff has a perfected security interest. The focal point of this issue is the 20 December 1973 financing statement. That financing statement covers:

> "1 living room suite—4 pc. red black
> 2 tables maple end
> 1 table brn.
> 1 Television Motorola—25 inch F21870621
> 1 coffee table
> 1 washing machine Auto Kenmore 6504807
> 2 lamps blk. gold
> 1 dryer Whirlpool 03717M939
> 1 gas stove heater
> 1 bed room suite 4 pc. Queen Cherry
> 4 chairs beige
> 1 bed room suite 4 pc. mah.
> 1 refrigerator Coldspot 81220951
> 1 sewing machine Enedas
> 1 air conditioner 3,2000(sic)
> 1 gas stove Kenmore."

The financing statement listed as debtor "Norman Carlyle" and was signed by "Janette Carlyle" as debtor. G.S. 25-9-402, as it stood at the times relevant to this case, provided that

> "[a] financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the securi-

ty interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. . . ."

Plaintiff's financing statement lists the items of collateral, gives addresses for both the debtor and the secured party. There are problems, however. At the top Norman Carlyle is listed as debtor. At the bottom Janette Carlyle signed as debtor. The question presented is whether Norman Carlyle "signed" the financing statement. Plaintiff argues that Janette Carlyle signed as agent of Norman Carlyle. Because financing statements only perform a notice function, we believe that any agency status should be obvious on the face of the financing statement. In this case, there is no indication of any agency relationship between Janette Carlyle and Norman Carlyle. We note that the secured party's signature does suggest an agency status: "Provident Finance Co. By/s/ Brenda Sutton". This signature is clearly adequate. No such suggestion of agency can be found in Janette Carlyle's signature. Nor does the mere fact of the marital relation establish agency. *Hayes v. Griffin*, 13 N.C. App. 606, 186 S.E. 2d 649 (1972). We cannot, therefore, say that Janette Carlyle signed as the agent of Norman Carlyle.

G.S. 25-1-201(39) provides that " '[s]igned' includes any symbol executed or adopted by a party with present intention to authenticate a writing." We must determine whether Norman Carlyle "adopted" the typed name at the top of the financing statement as his signature. We realize that the U.C.C. does have a liberal definition for "signed". Because of the importance placed upon financing statements, we believe that, in cases dealing with the *debtor's* signature on financing statements, the courts should apply this liberal definition with caution. Some other courts have applied these provisions somewhat liberally when dealing with a *creditor's* signature. *See, e.g. Benedict v. Lebowitz*, 346 F. 2d 120 (2d Cir. 1965). However, absence of the *debtor's* signature is a different matter. J. White and R. Summers, Uniform Commercial Code (1972) noted the distinction:

"We have found no case construing the official version of 9-402 in which a court found a financing statement to be ef-

fective despite the absence of the signature of the debtor. If the debtor's signature is omitted the financing statement is ineffective. . . ." White and Summers at 835.

They later note that, on the other hand, the courts are divided on the question of whether a creditor will be deemed to have adopted the typed name. The creditor ought always to be aware of the importance of the signature on the financing statement. Furthermore, because of the notice function of the financing statement, we believe that the financing statement can function adequately only when it meets the necessary requirements on its face. This position is supported by R. Anderson, Uniform Commercial Code (1971), where the author argues for an "objective" interpretation of financing statements. *See* Anderson, Vol. 4 at § 9-402:23. In this case, there is nothing at all on the face of the financing statement which suggests that Norman Carlyle "adopted" the typed name as his signature. Where, as in this case, there is nothing whatsoever on the face of the financing statement to suggest that the debtor "adopted" the typed name as his signature, the debtor has not signed the financing statement as required by G.S. 25-9-402, and that financing statement is ineffective.

Thus, we conclude that plaintiff has a perfected security interest in the property interests of Janette Carlyle in those items of personalty listed in the financing statement. It may be that she owns that property completely; on the other hand, she may own only an one-half interest in that property. We cannot determine from the record precisely what she does own. Plaintiff's security interest in the property of Janette Carlyle has priority over defendant's security interest. Conversely, as between the parties, defendant's security interest in the property of Norman Carlyle and in the property of Janette Carlyle not listed in the 30 December 1973 financing statement has priority under G.S. 25-9-301 and G.S. 25-9-312. Insofar as those items listed in plaintiff's financing statement are concerned, the trial court must determine how the property is owned and, upon proper petition, how to divide that property. In summary, plaintiff has priority only as to the property interest of Janette Carlyle in those items listed in the 20 December 1973 financing statement.

[3] In both motions for summary judgment there is a fatal defect. Neither motion has shown adequate jurisdictional grounds.

The record shows that the Carlyles filed a petition in bankruptcy on 23 September 1976, and "[t]hat, pursuant to the Carlyles' request, your Affiant [Gene West, a Beneficial employee] on September 30, 1976 did pick up the said furniture."

It is axiomatic that

"[B]ankruptcy courts have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession. And the test of this jurisdiction is not title in but possession by the bankrupt at the time of the filing of the petition in bankruptcy. . . ." *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 481, 60 S.Ct. 628, 630, 84 L.Ed. 876, 879-80 (1940).

Unless the parties can establish that the trustee has abandoned the property, the bankruptcy court is the only court having jurisdiction to adjudicate the rights of the parties in this property. We recognize that no set formalities are required for abandonment, but the evidence must establish a clear and unambiguous manifestation of an intent of the trustee in bankruptcy to abandon the property. *In the Matter of Newkirk Mining Co.*, 238 F. Supp. 1 (E.D.Pa. 1964), *aff'd per curiam* 351 F. 2d 954 (3d Cir. 1964). Also, the burden of proving abandonment is on the party seeking to show abandonment. *Hanover Insurance Co. v. Tyco Industries, Inc.*, 500 F. 2d 654 (3d Cir. 1974). Thus, unless the parties can offer facts to show abandonment, this case must be dismissed for lack of jurisdiction.

For the preceding reasons, the judgment of the trial court must be vacated and the case remanded. The trial court must first determine whether it can properly exercise jurisdiction over the property. If not, the case must be dismissed. If the trial court, however, determines that it has jurisdiction, the court shall then inquire into the property interests of Norman Carlyle and Janette Carlyle in the personalty listed in the 20 December 1973 financing statement and enter a judgment consistent with this opinion. The judgment of the trial court is vacated, and the case is remanded.

Vacated and remanded.

Judges MARTIN and ARNOLD concur.