**In re Billy W. & Reada F. GOOLSBY, Debtors.**

**C & J Leasing Corp., Appellant,**

v.

**Robert H. Waldschmidt, Appellee.**

Bankruptcy No. 301–09684.

Adversary No. 301–1587A.

Civil No. 3:02–0418.

United States District Court,
M.D. Tennessee,
Nashville Division.

Oct. 15, 2002.

**640**

Howard W. Wilson, Wilson & Bradley, Murfreesboro, TN, for debtors.

Robert H. Waldschmidt, Nashville, TN, pro se.

Beth Roberts Derrick, Nashville, TN, for U.S. Trustee.

### MEMORANDUM

TRAUGER, District Judge.

On this appeal from a decision of the United States Bankruptcy Court for the Middle District of Tennessee, C & J Leasing Corp. ("C & J") asserts that the Bankruptcy Court erred in concluding that C & J's UCC–1 financing statement was invalid under T.C.A. § 47–9–402. (Docket No. 26). In a March 19, 2002 telephonic order, the Bankruptcy Court held that (1) *"Authorized Signature* by: *Kelly Seward"* did not satisfy § 47–9–402(1)'s requirement that the debtor "sign" the UCC–1 and (2) this error was too serious for § 47–9–402(8) to save the UCC–1. (Docket No. 25, Pp. 3–4).[1]

For the reasons discussed herein, the March 19, 2001 decision of the Bankruptcy Court will be **affirmed.**

### I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

On December 15, 2000 Billy and Reada Goolsby executed a lease agreement with C & J Leasing Corp. ("C & J") for a Vermeer Brush Chipper 1230, S/N 797.[2] As part of the leasing agreement, the Goolsbys gave C & J power of attorney to sign and file a financing statement (UCC–1) on their behalf in order to protect its interest in the Chipper. C & J then prepared a UCC–1 for the Vermeer Brush Chipper. Where the UCC–1 calls for the debtor's signature, C & J's employee, Kelly Seward, signed it: *"Authorized Signature* by: *Kelly Seward."* C & J sent the UCC–1 to the Tennessee Secretary of State's office for filing on January 8, 2001. The office stamped "REJECT" on the form but proceeded to file it on January 9, 2001 anyway. (Docket No. 26, Ex. C).

The Goolsbys filed a Chapter 7 bankruptcy petition on August 29, 2001. Robert Waldschmidt was appointed as trustee on August 30, 2001. C & J then filed a proof of claim, alleging a secured claim on the Chipper, and attached a copy of the UCC–1 that it had filed with the Tennessee Secretary of State. Waldschmidt responded by filing an Adversary Proceeding to void C & J's security interest in the Chipper. The parties made cross-motions for summary judgment. By telephonic order issued on March 19, 2002, Chief United States Bankruptcy Judge George C. Paine, II granted Waldschmidt's motion for summary judgment. (Docket No. 26, Transcript of Proceedings Before the Honorable George C. Paine, II United States Bankruptcy Judge). C & J appeals from this order.

### II. ANALYSIS

 This court has jurisdiction to hear this appeal under 28 U.S.C. § 158(a)

---

1. Due to a mistake or an electronic failure, the March 19 telephonic delivery of the court's ruling was not recorded. On July 24, 2002, Judge Paine filed a written version of his oral ruling to "serve as the official transcript." (Docket No. 25).

2. Unless otherwise noted, the facts have been drawn from the parties' Pretrial Statement to the bankruptcy court containing certain "Uncontested Facts" and Exhibits. (Docket No. 29, Brief of Appellee, P. 3).

(1994). The district court, acting as an appellate court, "reviews a bankruptcy court's decision to determine whether its factual findings are clearly erroneous and its legal conclusions, which are subject to de novo review on appeal, are correct." *In re Caldwell,* 851 F.2d 852, 857 (6th Cir. 1988).

### A. THE COURT DECLINES TO CERTIFY THIS QUESTION TO THE TENNESSEE SUPREME COURT

 The Appellant has requested that the court certify this question to the Tennessee Supreme Court. (Docket No. 26, Brief of the Appellant, P. 3). The court finds that this question is not appropriate for certification. While there is no Tennessee authority on the issue at hand, the available authorities from other jurisdictions unanimously agree that an authorized signature on a UCC–1 must evidence the source of the signer's authority in order to fulfill § 47–9–402(1)'s signature requirement.[3] Especially since this is an issue of Uniform Commercial Code interpretation, the court concludes that the Tennessee Supreme Court would likely follow the existing authorities. Because this court can predict the Tennessee Supreme Court's decision, certification would only cause unnecessary delay and expense.

### B. THE FINANCING STATEMENT DOES NOT COMPLY WITH T.C.A. § 47–9–402

For the reasons discussed below, the court finds that C & J's UCC–1 was ineffective because it did not meet the requirements of § 47–9–402.

Two statutory provisions are at issue here. The first, T.C.A. § 47–9–402(1), explains the requirements for preparing financing statements:

A financing statement is sufficient if it gives the names of the debtor and the secured party, **is signed by the debtor,** gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. T.C.A. § 47–9–402(1)(emphasis added).

 The second provision, T.C.A. § 47–9–402(8), protects the effectiveness of some erroneously prepared financing statements. "A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." T.C.A. § 47–9–402(8). In *Brown v. Belarus Machinery, Inc.,* the Bankruptcy Court for the Eastern District of Tennessee explained the purpose of § 402(8):

> Minor mistakes in financing statements are not fatal because ... [§ 47–9–402] was intended to provide merely a system of notice filing .... Thus, even though there may be errors or deficiencies in descriptions, addresses, names, and even signatures, such errors will not destroy the effectiveness of a financing statement so long as they do not frustrate the underlying purpose of the filing requirements in affording notice to creditors of the possible existence of security interests.

*Brown v. Belarus Machinery, Inc.,* 83 B.R. 515, 517 (Bankr.E.D.Tenn.1988) (citing J. White and R. Summers, *Handbook of the Law Under the Uniform Commercial Code,* § 23–16 (2d ed.1980). The determination of whether or not an error in a financing statement is seriously misleading, and thus whether § 402(8) saves a

---

**3.** See Part IIB for a survey and analysis of these authorities.

defective UCC–1, is a question of fact to be determined by the trial court. *Lankford v. U.S.*, 1991 WL 185224, *10 (M.D.Tenn.)); *Belarus Machinery*, 83 B.R. at 517.

The main issue in this case is whether Kelly Seward's signature, signed as *"Authorized Signature* by: *Kelly Seward,"* satisfies § 47–9–402's requirement that the debtor sign the UCC–1. More precisely, this is a question of whether Seward's signature was sufficient, despite the fact that it did not describe the *source* of Seward's authority.[4]

In *American Pulverizer Co. v. Cantrell,*[5] the Court of Appeals of Kentucky found that, in order to be sufficient, an authorized individual's signature must evidence his agency relationship with the debtor. *American Pulverizer,* 694 S.W.2d at 717. In that case, Alexander Hutchings, the incorporator of debtor Energy Klenzing, Inc., simply signed the UCC–1 *"Alexander Hutchings." Id.* The court noted a jurisdictional split on whether a signature affixed in an individual capacity can suffice as the corporate debtor's signature but found that no jurisdiction had found such an individual signature to be sufficient if it did not "evidence [either] that the individual signer was an officer of the corporation or duly authorized by the corporate debtor to sign on its behalf." *Id.* Thus, the court concluded that the signature must include evidence of the signer's authority in order to be sufficient.

An example of such a case is *Sherman v. Upton,*[6] in which the Supreme Court of South Dakota found that the individual signatures of the President and Secretary of Upton, Inc., followed by the titles *"Pres."* and *"Sec."* satisfied § 402(1)'s requirements because these signatures were "indicative of their intention to appear on these documents as corporate officers." *Upton,* 242 N.W.2d at 671.

In *Murray v. Conrad,*[7] the Supreme Court of Iowa distinguished the signature requirement for financing statements from the signature requirement for security agreements in finding that Gerald Conrad's individual signature validly bound Conrad Distributing, Inc. to a security agreement. *Murray,* 346 N.W.2d at 819–820.

> Section 9–402 requires that the financing statement include the name, as well as the signature of the debtor. The inclusion of the debtor's name on the financing statement generally prevents misfiling and establishes who the debtor is. The security agreement signature requirement, on the other hand, is primarily a statute of frauds. *Thus, when an authorized principal of the company has executed a security agreement, the absence of the true business name should not defeat the security interest.*

*Id.* (quoting J. White and R. Summers, *Handbook of the Law Under the Uniform Commercial Code* 913 (2d ed.1980)) (emphasis added). The court went on to indicate that "[n]otice and filing are not issues here." *Id.* at 820. By implication, the Supreme Court of Iowa concurs that a financing statement is invalid where the agent-signer fails to evidence his authority.

Similarly, in *Provident v. Beneficial Fi-*

---

4. Waldschmidt does not dispute Kelly Seward's actual authority to sign on the Goolsby's behalf. The Goolsbys granted limited power of attorney to C & J to sign financing statements in the leasing agreement, and Kelly Seward was acting as C & J's agent.

5. 694 S.W.2d 714 (Ky.Ct.App.1985).

6. 90 S.D. 467, 242 N.W.2d 666 (1976).

7. 346 N.W.2d 814 (Iowa 1984).

*nance Co.,*[8] the Court of Appeals of North Carolina found that a wife's signature on her husband's behalf was invalid because she simply signed her name without indicating that she was acting as his agent. *Provident,* 36 N.C.App. 401, 245 S.E.2d 510, 515. That court also opined that, while the § 402 requirements are generally intended to be applied liberally, the debtor's signature requirement is intended to be applied more strictly than are the other requirements. *Id.* (citing J. White and R. Summers, Uniform Commercial Code 835 (1972)).

Appellant relies on *Plemens v. Didde–Glaser, Inc.,*[9] in which the Court of Appeals of Maryland found that Kenneth C. Slatkoff's signature on behalf of Slatkoff–Tuvin, Inc. "substantially complied" with the UCC's requirements such that the financing statement was not invalid. *Plemens,* 224 A.2d at 469. However, this case is distinguishable because it was not based on Maryland's equivalent of § 402(1), but rather its equivalent of § 402(8). *Id.* The court found that the UCC–1 was valid because there was "no showing that anyone was misled by the signature." *Id.* Thus, *Plemens* does not show that the requirements of § 402(1) can be satisfied by a signature that does not evidence the signer's authority, but rather only that in *Plemens* the error was minor enough that § 402(8) protected the financing statement's effectiveness. Thus, *Plemens* is inapposite to the § 402(1) issue in this case.

In *In re Garrett O. Driscoll & Assoc.,*[10] the Bankruptcy Court for the Eastern District of Massachusetts found that the signature *"Garret O. Driscoll"* was sufficient for a financing statement to perfect the creditor's claim against Garrot O. Driscoll and Associates, Inc. *Driscoll,* 151 B.R. at 636. The court gave no reasons for this conclusion but cited *Plemens* and some other cases.[11] *Id.* Because *In re Driscoll* was so factually similar to *Plemens,* and because *Plemens* was the only authority that the *Driscoll* court cited that actually supported its conclusion,[12] the most reasonable interpretation of *Driscoll* is that it, too, found the UCC–1 effective under § 402(8) rather than § 402(1).

Therefore, because the available authorities unanimously find that § 402(1) requires that an authorized individual's signature provide evidence of the signer's authority, and because Kelly Seward's signature did not describe the basis of her authority at all, the court finds that Kelly Seward's signature did not fulfill the requirements of § 402(1).

 Furthermore, the court finds that § 402(8) does not save the financing statement because the error was not minor. Again, whether an error is minor and not seriously misleading is a question of fact for the trial court and is reviewed on appeal only for clear error. *Lankford,* 1991 WL 185224, \*10; *Belarus Machinery,* 83 B.R. at 517; Bankr.R. 8013. In this case,

---

8. 36 N.C.App. 401, 245 S.E.2d 510 (1978).

9. 244 Md. 556, 224 A.2d 464 (1966).

10. 151 B.R. 634 (Bankr.D.Mass.1993).

11. The court also cited *In re Great Basin Trans., Inc.* 32 B.R. 365 (Bankr.W.D.Okla. 1983), *Murray v. Conrad,* 346 N.W.2d 814 (Iowa 1984), and *Sherman v. Upton, Inc.,* 90 S.D. 467, 242 N.W.2d 666 (1976). However, both *In re Great Basin* and *Murray* related to the validity of individual signatures on *securi-*

*ty agreements,* not financing statements, and in *Sherman* the signature included evidence of the signer's authority. Therefore, these cases are actually inapposite to the question of whether an individual's signature that does not evidence the signer's agency relationship can satisfy the signature requirement for financing statements.

12. See footnote 11.

the bankruptcy court found that, "The ineffective signature of the debtor is not a minor error." (Docket No. 25, P. 4). The court does not view this finding as clearly erroneous. The error is far more significant and misleading than the one at issue in *Plemens*. In *Plemens* the signer's last name, "Slatkoff," was the same as the first half of the corporate debtor's name, "Slatkoff–Tuvin, Inc." *Plemens*, 224 A.2d at 465–66. Thus, a reasonable reader could fairly conclude that there is a decent probability that the signer, Slatkoff, was an agent of the debtor, Slatkoff–Tuvin, Inc. No such obvious connection can be drawn between "Kelly Seward" and "Billy and Reada Goolsby." Therefore, the court concludes that the bankruptcy court's finding was not clearly erroneous.

## C. THE COURT DECLINES TO ADDRESS THE ISSUE OF THE "REJECT" STAMP

The bankruptcy court declined to address the effect of the "REJECT" stamp on the UCC–1 because the issue was mooted by the court's conclusion that the UCC–1 was invalid under § 402(1) for lack of a debtor's signature. This court agrees that this issue is mooted by the § 402(1) problem and declines to address it.

## III. CONCLUSION

For the reasons discussed herein, the court finds that the bankruptcy court's conclusions of law were correct and its findings of fact were not clearly erroneous. The March 19, 2002 decision of the bankruptcy court will be **AFFIRMED**.

An appropriate Order will enter.