RENTENBACH CONSTRUCTORS, INC., Plaintiff v. CM PARTNERSHIP and LEXINGTON STATE BANK, Defendants

No. COA06-242

(Filed 2 January 2007)

**Uniform Commercial Code— security interest—accounts receivable**

The trial court did not err by granting summary judgment in favor of defendant bank based on its determination that the bank had a priority lien position with respect to monies owed by plaintiff to Forsyth Drywall, because: (1) defendant bank perfected its security interest in the accounts receivable several years prior to defendant CM, and thus had a superior security interest; (2) although CM executed a security agreement with Forsyth Drywall prior to the date of the bank's 26 June 2002 loan to Forsyth Drywall, the bank nonetheless has priority since it was the first to file a financing statement; and (3) in the absence of a security agreement showing an assignment of the bank's security interest in the accounts receivable, there was no evidence that such an

assignment took place and the record strongly suggested that the parties intended only to exchange their respective priority positions with respect to the accounts receivable.

Appeal by defendant-appellant from judgment entered 26 September 2005 by Judge Lindsay R. Davis, Jr., in Guilford County Superior Court. Heard in the Court of Appeals 24 August 2006.

*Clark Bloss & Wall, PLLC, by John F. Bloss, for defendant-appellant.*

*Brinkley Walser, PLLC, by G. Thompson Miller, for defendant-appellee.*

*Carruthers & Roth, by Kenneth R. Keller.*

LEVINSON, Judge.

Defendant-appellant, CM Partnership ("CM"), appeals from summary judgment entered in favor of defendant-appellee Lexington State Bank ("LSB"). We affirm.

Forsyth Drywall and Fireproofing, L.L.C. ("Forsyth Drywall") is a North Carolina corporation; defendants are secured creditors of Forsyth Drywall. The relevant facts are summarized as follows: In 1999 LSB loaned money to Forsyth Drywall, secured by Forsyth Drywall's inventory, accounts, equipment, and other collateral. LSB filed a UCC financing statement on 12 February 1999. In 2001 United Capital Funding Corp. ("UC") was interested in factoring some of Forsyth Drywall's accounts receivable. When UC's investigation revealed that Forsyth Drywall's accounts receivable were part of the collateral for LSB's loan to Forsyth Drywall and thus were subject to a prior lien, UC requested a "first lien position" before it would factor Forsyth Drywall's accounts. On 24 September 2001 LSB filed an amendment to its financing statement, purporting to make a partial assignment to UC of its "security interest" in certain of Forsyth Drywall's accounts receivable. Thereafter, UC advanced Forsyth Drywall money in exchange for certain of Forsyth Drywall's accounts receivable.

On 20 June 2002 Forsyth Drywall entered into a separate factoring agreement with CM, in which CM agreed to buy Forsyth Drywall's accounts receivable, including the account at issue herein. CM advanced money to Forsyth Drywall, which then repaid the money it had borrowed from UC. Forsyth Drywall and CM executed a security agreement setting out the terms of their factoring agree-

ment. However, CM did not file a UCC financing statement until January 2003.

On 26 June 2002 LSB executed a second loan to Forsyth Drywall, consolidating its debt to LSB. This loan was also secured by Forsyth Drywall's assets, inventory, accounts receivable, and other collateral, including the account at issue in the present case. LSB perfected its security interest in this collateral by reliance on its 1999 financing statement. In February 2003 UC executed a "reassignment" of the first lien position to LSB.

Forsyth Drywall later defaulted on its obligations to both LSB and CM, and filed a Chapter 7 bankruptcy petition in March 2003. Thereafter, defendants each claimed a first priority, perfected security interest in approximately $72,500 that plaintiff Rentenbach Constructors, Inc., owes to Forsyth Drywall. Plaintiff, which is not a party to this appeal, filed an interpleader action in November 2004. Defendants interpled their respective claims, and each filed a summary judgment motion. On 26 September 2005 the trial court granted LSB's motion for summary judgment, from which order CM appeals.[1]

Standard of Review

CM appeals the entry of summary judgment in favor of LSB. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005). In the instant case:

> Each party based its claim upon the same sequence of events. . . . Neither party has challenged the accuracy or authenticity of the documents establishing the occurrence of these events. Although the parties disagree on the legal significance of the established facts, the facts themselves are not in dispute. Consequently, we conclude that 'there is no genuine issue as to any material fact' surrounding the trial court's summary judgment order. We next consider whether the trial court correctly determined that [LSB] 'is entitled to a judgment as a matter of law.'

---

1. The subject action was brought in the Superior Court after Forsyth Drywall filed Chapter 7 bankruptcy, and only after defendants CM and LSB were granted relief from the automatic bankruptcy stay, 11 U.S.C. § 362.

*Adams v. Jefferson-Pilot Life Ins. Co.*, 148 N.C. App. 356, 359, 558 S.E.2d 504, 507 (2002) (quoting N.C. Gen. Stat. § 1A-1, Rule 56 (2005)).

---

The issue before the trial court was determination of which defendant had a priority lien position with respect to monies owed by plaintiff to Forsyth Drywall. We agree with the parties that the relevant transactions are governed by the Uniform Commercial Code, N.C. Gen. Stat. § 25-1-101 *et. seq* (2005) (hereinafter the UCC). *See* N.C. Gen. Stat. § 25-9-109(a)(1) and (3) (2005). In our analysis, we have also made use of the Official Comment to various sections of the UCC:

> This Court has noted that the commentary to a statutory provision can be helpful in some cases in discerning legislative intent. In *Bogle* this Court noted that since the commentary printed with the [statute at issue] was not enacted into law, it was not binding but, where proper, could be given substantial weight in our efforts to discern legislative intent.

*Parsons v. Jefferson-Pilot Corp.*, 333 N.C. 420, 425, 426 S.E.2d 685, 689 (1993) (citing *State v. Bogle*, 324 N.C. 190, 376 S.E.2d 745 (1989)) (other citation omitted).

Priority among competing security interests is governed generally by N.C. Gen. Stat. § 25-9-322 (2005), which states in relevant part that:

> (a) . . . Except as otherwise provided in this section, priority among conflicting security interests . . . in the same collateral is determined according to the following rules:

> (1) Conflicting perfected security interests . . . rank according to priority in time of filing or perfection. <u>Priority dates from the earlier of the time a filing covering the collateral is first made</u> or the security interest . . . is first perfected, <u>if there is no period thereafter when there is neither filing nor perfection</u>.

N.C. Gen. Stat. § 25-9-322(a)(1) (2005) (emphasis added). The "filing covering the collateral" is a UCC-1 financing statement:

> Pursuant to §§ 25-9-302(1) and 25-9-303, therefore, a financing statement that identifies the debtor, covers the collateral at issue, and contains the debtor's signature must be filed in order to perfect a security interest of the kind at issue in this case. Because filing is a necessary element of perfection, § 25-9-303, the priority provision discussed above, § [25-9-322(a)(1)], essentially creates

a rule in which the first creditor to file a sufficient financing statement has priority.

*In Re Environmental Aspecs, Inc.*, 235 B.R. 378, 385 (E.D.N.C. 1999) (emphasis added) (citing *Finance Co. v. Finance Co.*, 36 N.C. App. 401, 245 S.E.2d 510 (1978)); *see also* N.C. Gen. Stat. § 25-9-310(a) (2005) ("Except as otherwise provided . . . a financing statement must be filed to perfect all security interests and agricultural liens."). Thus, the first party to perfect its security interest in collateral by filing a UCC financing statement generally will have priority over subsequent lenders who rely on the same collateral to secure a loan.

The financing statement may be filed before the security agreement is drafted. *See* N.C. Gen. Stat. § 25-9-308(a) (2005) (A security interest is perfected if "it has attached and all of the applicable requirements for perfection in G.S. 25-9-310 through G.S. 25-9-316 have been satisfied. A security interest is perfected when it attaches if the applicable requirements are satisfied before the security interest attaches.").

"North Carolina's is essentially a system of notice filing pursuant to which the notice provided by a financing statement 'indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs.' 'The purpose of a notice-filing statute is to . . . furnish[] to others intending to enter a transaction with the debtor a starting point for investigation which will result in fair warning concerning the transaction contemplated.' " *In Re Environmental Aspecs, Inc.*, 235 B.R. at 385-86 (quoting *Evans v. Everett*, 279 N.C. 352, 356, 183 S.E.2d 109, 112 (1971), and *TMMB Funding v. Associated Food Stores*, 136 A.D.2d 540, 542, 523 N.Y.S.2d 161, 163 (N.Y.A.D. 2d Dep't 1988)).

Accordingly, "the financing statement's purpose is to merely alert the third party as to the need for further investigation, never to provide a comprehensive data bank as to the details of prior security arrangements. The notice system of the Code places the burden of further inquiry upon anyone seeking additional information." *Thompson v. Danner*, 507 N.W.2d 550, 561 (N.D. 1993) (citation omitted). In this regard, the Commentary to N.C. Gen. Stat. § 25-9-502 states in pertinent part that:

. . . This section adopts the system of 'notice filing.' What is required to be filed is . . . only a simple record providing a limited amount of information (financing statement). The financing state-

ment may be filed before the security interest attaches or there-after. . . . The notice itself indicates merely that a person may have a security interest in the collateral indicated. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs. . . .

Subject to certain exceptions not at issue in the instant case, a financing statement is effective for five years, N.C. Gen. Stat. § 25-9-515(a) (2005), during which time it may be relied on to perfect multiple security interests, including those that attach after the filing of the financing statement. Commentary to N.C. Gen. Stat. § 25-9-502 states in pertinent part that:

> Notice filing . . . obviates the necessity of refiling on each of a series of transactions in a continuing arrangement[.] . . . [A] financing statement is effective to encompass transactions under a security agreement not in existence and not contemplated at the time the notice was filed, if the indication of collateral in the financing statement is sufficient to cover the collateral concerned.

In the above described situation, the date of perfection relates back to the date the financing statement was filed, provided there has been no gap during which the financing statement had expired. *See, e.g., Finance Co. v. Finance Co.*, 36 N.C. App. 401, 245 S.E.2d 510 (1978) (upholding reliance on financing statement to perfect a second loan after the first loan was paid in full and terminated, as financing statement was not terminated and had not expired);[2] *In re K & P Logging, Inc.*, 272 B.R. 867, 876 (2001) ("financing statement which adequately describes collateral can serve to perfect a security interest not contemplated by the parties at the time of the filing of the financing statement").

In the instant case, LSB perfected its security interest in the accounts receivable prior to CM, and thus has a superior security interest. The record on appeal includes the financing statement filed by LSB in 1999 listing accounts receivable as part of the collateral covered by the financing statement, as well as the security agreement executed by LSB and Forsyth Drywall on 26 June 2002, both of which

---

2. CM asserts, based on *dicta* in this case, that the result should be different under N.C. Gen. Stat. § 25-9-322 as it exists today. However, the statute has been amended several times since the 1977 *Finance Co.* opinion, and our reading of the present version does not indicate that a different result is required.

identify accounts receivable as collateral for LSB's loan to Forsyth Drywall.[3] LSB relied on the financing statement it filed in 1999 to perfect its security interest in collateral for its 2002 loan to Forsyth Drywall. Accordingly, its security interest was perfected upon execution of the security agreement on 26 June 2002. The record also includes the factoring agreement executed by CM and Forsyth Drywall on 20 June 2002, and the financing statement filed by CM in January 2003. These documents establish that LSB perfected its security interest on 26 June 2002, while CM did not perfect its security interest until six months later. Consequently, LSB's security interest in the accounts receivable has priority over that of CM.

We have considered and rejected CM's arguments to the contrary. Preliminarily, we note that the Official Comment to N.C. Gen. Stat. § 25-9-513 (2005) explains the implications of CM's failure to immediately perfect its security interest:

> 4. Buyers of Receivables. . . . While the security interest of a buyer of accounts . . . (B-1) is perfected, the debtor is not deemed to retain an interest in the sold receivables and thus could transfer no interest in them to another buyer (B-2)[.] . . . However, for purposes of determining the rights of the debtor's creditors and certain purchasers of accounts or chattel paper from the debtor, while B-1's security interest is unperfected, the debtor-seller is deemed to have rights in the sold receivables, and a competing security interest or judicial lien may attach to those rights. See sections 9-109 and 9-318 and [C]omment 5.

This is underscored by the Official Commentary to N.C. Gen. Stat. § 25-9-109:

> 5. . . . Following a debtor's outright sale and transfer of ownership of a receivable, the debtor-seller retains no legal or equitable rights in the receivable that has been sold. See section 9-318(a). This is so whether or not the buyer's security interest is perfected. . . . However, if the buyer's interest in accounts . . . is unperfected, a . . . perfected secured party, or qualified buyer can reach the sold receivable and achieve priority over (or take free of) the buyer's unperfected security interest under section 9-317. This is so . . . for the simple reason that sections 9-317, 9-318(b), and 9-322 make it so, as did former sections 9-301 and 9-312. Because the buyer's security interest is unperfected, for purposes

---

3. No party has suggested or argued that the financing statement concerning LSB's secured interest was not properly continued or renewed.

of determining the rights of creditors of and purchasers for value from the debtor-seller, under section 9-318(b) the debtor-seller is deemed to have the rights and title it sold. Section 9-317 subjects the buyer's unperfected interest in accounts and chattel paper to that of the debtor-seller's lien creditor and other persons who qualify under that section.

CM concedes that it did not perfect its security interest until January 2003, well after LSB filed its financing statement. Although CM executed a security agreement with Forsyth Drywall prior to the date of LSB's 26 June 2002 loan to Forsyth Drywall, LSB nonetheless has priority because it was the first to file a financing statement.

CM bases its claim to a superior security interest on the existence of an amendment to the 1999 financing statement filed by LSB. Therefore, we next consider the legal significance of this amendment. As discussed above, the amendment states that it is a partial assignment of LSB's "security interest" in certain accounts receivable. CM argues that, with the mere filing of this amendment, LSB thereby "assigned away its security interest" and "assigned its rights under its financing statement."[4] CM further asserts that after LSB filed the amendment to its original financing statement, "LSB's security interest was undisputedly unperfected."

LSB's amendment to the February 1999 financing statement does not purport either to (1) assign a "bare" financing statement not associated with any perfected security interest; or (2) to assign its priority position, freed from any security interest. Accordingly, we do not address the parties' arguments as to whether such assignments are possible under North Carolina statute and common law.

In the instant case, the financing statement amendment states that it is a partial assignment of "any security interest" that LSB had in certain accounts receivable that were collateral for LSB's loan to Forsyth Drywall. Under N.C. Gen. Stat. § 25-1-201(37) (2005), a security interest is "an interest in personal property or fixtures which secures payment or performance of an obligation." (emphasis added). Thus, a security interest in collateral cannot be transferred unless the underlying debt is also assigned:

A security interest cannot exist, much less be transferred, independent from the obligation which it secures. The security inter-

_____

4. CM does not argue, and we therefore do not address, whether the assignment by LSB of its security interest could constitute a contractual agreement by LSB to subordinate its security interest, N.C.G.S. § 25-9-339 (2005).

est follows the debt. If the debt is not transferred, neither is the security interest.

*In re Leisure Time Sports,* 194 B.R. 859, 861 (9th Cir. B.A.P. 1996) (citing *Matter of DiSanto & Moore Associates, Inc.,* 41 Bankr. 935, 938 (N.D. Cal. 1984)) (other citations omitted). "This is not a mere technical legal requirement: To allow the assignee of a security interest to enforce the security agreement [absent transfer of the underlying debt] would expose the obligor to a double liability, since a holder in due course of the promissory note clearly is entitled to recover from the obligor." *In re Belize Airways, Ltd.,* 7 B.R. 604, 607 (Bankr. S.D. Fla. 1980).

CM's argument rests on assumptions drawn from the bare amendment to the financing statement. "Obviously, absent an existing security agreement in some form or fashion, a financing statement, without more, has no legal import or effect." *U. S. v. Greenstreet,* 912 F. Supp. 224, 228 (N.D. Tex. 1999). "Furthermore, other jurisdictions which have considered the question involved in this action have held that it is the language in the security agreement, not the financing statement, that determines what collateral is subject to a security interest. . . . Accordingly, we hold that the security agreement, not the financing statement, establishes the scope or the limits of the security interest." *Dowell v. D.R. Kincaid Chair Co.,* 125 N.C. App. 557, 561-62, 481 S.E.2d 670, 673 (1997) (citation omitted).

In the instant case, CM failed to include in the record either (1) any security agreement between LSB and Forsyth Drywall other than the one executed 26 June 2002; or (2) any security agreement between LSB and UC. Consequently, the record does not establish the extent of LSB's security interest in the accounts receivable under the first loan to Forsyth Drywall. Nor does it include any showing that a portion of that first debt was assigned to UC. In the absence of a security agreement showing an assignment of LSB's "security interest" in the accounts receivable, there is no evidence that such an assignment took place. Indeed, the record strongly suggests that the parties intended only to exchange their respective priority positions with respect to the accounts receivable. For example, the financing statement filed by LSB and the one terminated by UC bear different file numbers, indicating that UC's loan to Forsyth Drywall was separate from LSB's. The affidavit executed by UC executive Ivan Baker states that the amendment was filed because UC "required that LSB assign its first lien position in accounts receivable." However, regardless of whether the record proves that LSB and UC exchanged priority posi-

tions, it clearly <u>fails</u> to include a security agreement showing an assignment of Forsyth Drywall's original loan to UC, along with the corresponding security interest in certain accounts receivable.

"In reviewing the propriety of summary judgment, the appellate court is restricted to assessing the record before it. Only those pleadings and other materials that have been considered by the trial court for purposes of summary judgment and that appear in the record on appeal are subject to appellate review. If on the basis of that record it is clear that no genuine issue of material fact existed and that the movant was entitled to judgment as a matter of law, summary judgment was appropriately granted." *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 690, 340 S.E.2d 374, 377 (1986) (citing *Vassey v. Burch*, 301 N.C. 68, 74, 269 S.E.2d 137, 141 (1980), and *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E.2d 823 (1971)).

As discussed above, CM has appealed a summary judgment order:

The moving party bears the burden of showing that no triable issue of fact exists. This burden can be met by proving: (1) that an essential element of the non-moving party's claim is nonexistent; (2) that discovery indicates the non-moving party cannot produce evidence to support an essential element of his claim; or (3) that the non-moving party cannot surmount an affirmative defense which would bar the claim.

*Union v. Branch Banking & Trust Co.*, 176 N.C. App. 711, 714 n.2, 627 S.E.2d 276, 277-78 n.2 (2006). " 'Once the party seeking summary judgment makes the required showing, the burden shifts to the non-moving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a prima facie case at trial.' " *Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 705, 708, 582 S.E.2d 343, 345 (2003) (quoting *Gaunt v. Pittaway*, 139 N.C. App. 778, 784-85, 534 S.E.2d 660, 664 (2000)), *aff'd*, 358 N.C. 137, 591 S.E.2d 520 (2004).

In the instant case, LSB introduced evidence that it perfected its security interest in Forsyth Drywall's accounts receivable several years before CM, and thus had a priority lien on the proceeds at issue. CM has not produced any evidence to refute this showing. Accordingly, we conclude that the trial court did not err by entering summary judgment in favor of LSB and that the trial court's order must be

IN RE L.C., I.C., L.C.

[181 N.C. App. 278 (2007)]

Affirmed.

Judge STEELMAN concurs.

Judge STEPHENS concurred prior to 31 December 2006.